## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LOWRIDER VENTURES, LLC, and
CARLOS FERNANDEZ, an individual,

     Plaintiffs,

v.

GOLO ENTERTAINMENT, LLC;
RICHARD OCHOA, an individual; BRIAN
ACQUAFRESCA, an individual;
MOTORSPORT SHOWCASE EVENTS,
LLC; DELRIO MARKETING, INC.;
LOWRIDER EVENTS INC.; ARTEMIS
PROMOTIONS; IMPALAS MAGAZINE;
JOHN MUNOZ, an individual d/b/a JM
SHOWCASE; LAS VEGAS CONVENTION
AND VISITORS AUTHORITY; RENO-
SPARKS CONVENTION & VISITORS
AUTHORITY; SALT LAKE COUNTY,
UTAH; CITY OF ALBUQUERQUE, NEW
MEXICO; TOWN OF SUPERIOR,
ARIZONA; and DOES 1-30, inclusive,

     Defendants.

Case No. 2:26-cv-02269

## COMPLAINT

Plaintiffs Lowrider Ventures, LLC ("Lowrider Ventures") and Carlos Fernandez ("Mr. Fernandez", and with Lowrider Ventures, "Plaintiffs")), for their Complaint against named defendants and Does 1-30, state and allege as follows:

## INTRODUCTION

1. This is an action for trademark counterfeiting, trademark infringement, unfair competition, false advertising, cybersquatting, and common law violations arising from Defendants' unauthorized use of Plaintiff Lowrider Ventures' LOWRIDER® trademarks, the

GOLO MAN® trademark, and related intellectual property in connection with automotive car shows, events, and merchandise. Plaintiffs also assert causes of action for defamation and other common law violations.

2. For nearly half a century, 49 years in all, the LOWRIDER® brand has been synonymous with lowrider automotive culture, events, and community throughout the United States, hosting LOWRIDER SUPERSHOWS™ across the United States that celebrate artistry, lowriding, and unity.

3. Lowrider Ventures, through its predecessor-in-interest and licensees, has invested substantial resources in developing, promoting, and protecting the LOWRIDER® brand, including the distinctive LOWRIDER® and LOWRIDER SUPERSHOW™ marks used in connection with automotive events and merchandise.

4. Defendants GoLo Entertainment, LLC ("GoLo"), Richard Ochoa ("Ochoa"), Brian Acquafresca ("Acquafresca"), Motorsport Showcase Events, LLC ("Motorsport Showcase"), DelRio Marketing, Inc. ("DelRio"), Lowrider Events Inc. ("Lowrider Events"), Artemis Promotions ("Artemis"), Impalas Magazine ("Impalas"), and John Munoz d/b/a JM Showcase ("JM Showcase") (the "Event Defendants") have engaged in a coordinated scheme to trade on the goodwill and reputation of Lowrider Ventures, Mr. Fernandez, and the LOWRIDER® marks by organizing and promoting a series of automotive events using confusingly similar marks and trade dress, including the LOWRIDER SUPERSHOW™ mark, without authorization from Lowrider Ventures. The Event Defendants, together with Las Vegas Convention and Visitors Authority, Reno-Sparks Convention & Visitors Authority, Salt Lake County, Utah, City of Albuquerque, New Mexico, and Town of Superior, Arizona (the "Venue Defendants"), are collectively referred to as "Defendants."

5.     In furtherance of Defendants' coordinated scheme, Defendants have made false and defamatory statements about Lowrider Ventures and Mr. Fernandez.

## THE PARTIES

6.     Plaintiff Lowrider Ventures, LLC is a limited liability company that acquired intellectual property rights, including trademarks, from Hearst Autos, Inc. related to the LOWRIDER® brand. Lowrider Ventures is the owner of the LOWRIDER® marks and related intellectual property.  Lowrider Ventures is a Kansas Domestic Limited Liability Company with a principal place of business located at 8101 College Blvd., Suite 130, Overland Park, KS 66210.

7.     Plaintiff Carlos Fernandez is an individual and the principal of Lowrider Ventures with a primary residence in Overland Park, KS. Mr. Fernandez is responsible for the acquisition, management, and operation of the LOWRIDER® brand. Mr. Fernandez has personal goodwill and reputation in the lowrider community that is directly tied to the LOWRIDER® brand, and his personal and professional reputation has been directly harmed by Defendants' conduct.

8.     On information and belief, Defendant GoLo Entertainment, LLC is a limited liability company doing business in the State of Arizona and throughout the United States, operating the website www.goloentertainment.com. GoLo can be served through its individual agent, Richard Ochoa.

9.     On information and belief, Defendant Richard Ochoa is an individual residing in the State of Arizona who is the founder, principal, and/or operator of GoLo and who has held himself out as "Lowrider Events Tour Director."

10.     On information and belief, Defendant Brian Acquafresca is an individual residing in the state of California who is an owner of DelRio Marketing, Inc. and operates one or more

websites, such as gearheadevents.com, for purposes of benefiting from the LOWRIDER® and GOLO MAN® trademarks.

11.    On information and belief, Defendant Motorsport Showcase Events, LLC is a limited liability company organized under the laws of Arizona, with its principal place of business in Queen Creek, Arizona. Motorsport Showcase can be served through its individual agent, Richard Ochoa.

12.    Defendant DelRio Marketing, Inc. is a corporation organized under the laws of California, with its principal place of business at 202 E. Palm Street, Exeter, California 93221. DelRio was previously a licensee of Lowrider Ventures' predecessors-in-interest under the Event License Agreement and Merchandise License Agreement described herein, which agreements expired on December 31, 2025.  DelRio can be served through its individual agent, Brian Acquafresca.

13.    On information and belief, Defendant Lowrider Events Inc. is a business entity doing business in the United States, operating the website www.lowriderevents.com and the Instagram account @lowrider_events_inc. Lowrider Events is the primary organizer of the "Tampa Lowrider Supershow" and "Charlotte Lowrider Supershow" events that are part of the 2026 Lowrider Throwback Tour, which is scheduled to visit multiple cities across the country ("2026 Throwback Tour").  Lowrider Events can be served through its individual agent, Carlos Bickers.

14.    On information and belief, Defendant Artemis Promotions is a business entity doing business in New Mexico and throughout the United States, which can be contacted at artemispromotions505@gmail.com. Artemis Promotions is the primary organizer of the "Albuquerque Super Show Throwback," "Cinco de Mayo Lowrider Fiesta," "Salt Lake City

Supershow," and "Las Vegas Lowrider Super Show 2026" events that are part of the 2026 Throwback Tour. Artemis Promotions can be served through its agents, Joe Romero or Saralisa Sanchez.

15. On information and belief, Defendant Impalas Magazine is a business entity doing business in the United States, operating the website www.impalasmagazine.com. Impalas Magazine is the primary organizer of the "Stockton Supershow" and "Washington Supershow" events that are part of the 2026 Throwback Tour. Impalas Magazine can be served through its individual agent, Mark Sermino.

16. On information and belief, Defendant John Munoz is an individual doing business as "JM Showcase" in the United States. John Munoz d/b/a JM Showcase is the primary organizer of the "Reno Takeover" event that is part of the 2026 Throwback Tour.

17. On information and belief, Defendant Las Vegas Convention and Visitors Authority ("LVCVA") , with its principal office located at 3150 Paradise Road, Las Vegas, Nevada 89109, owns and operates the Las Vegas Convention Center, which is the scheduled venue for the "Las Vegas Lowrider Supershow" on September 19, 2026, as part of the 2026 Throwback Tour.

18. On information and belief, Defendant Reno-Sparks Convention & Visitors Authority ("RSCVA"), with its principal office located at 4590 South Virginia Street, Reno, Nevada 89502, owns and operates the Reno-Sparks Convention Center, which is the scheduled venue for the "Reno Supershow" on May 16, 2026, as part of the 2026 Throwback Tour.

19. On information and belief, Defendant Salt Lake County, Utah owns the Mountain America Exposition Center, located at 9575 South State Street, Sandy, Utah 84070. The Mountain America Exposition Center is the scheduled venue for the "Salt Lake City Supershow" on July 18, 2026, as part of the 2026 Throwback Tour.

20.     On information and belief, Defendant City of Albuquerque, New Mexico owns the Albuquerque Convention Center, located at 401 2nd Street NW, Albuquerque, New Mexico 87102, and the Albuquerque Rail Yards, located at 777 1st Street SW, Albuquerque, New Mexico 87102. The Albuquerque Convention Center is the scheduled venue for the "Albuquerque Super Show" on June 7, 2026, and the Albuquerque Rail Yards was the scheduled venue for the "Cinco de Mayo Lowrider Fiesta" on May 2, 2026, both as part of the 2026 Throwback Tour.

21.     On information and belief, Defendant Town of Superior, Arizona, located at 490 Main Street, Superior, Arizona 85173, hosted the "Superior Car Show On Main" on March 7, 2026, as part of the 2026 Throwback Tour.

22.     Plaintiffs are not aware of the true names and capacities of the doe defendants sued herein as Does 1-30, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of such fictitiously named Defendants when ascertained.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq. (the "Lanham Act").

24.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff Lowrider Ventures, LLC is a citizen of Kansas because all of its members are citizens of Kansas. Plaintiff Carlos Fernandez is a citizen of Kansas. No Defendant is a citizen of Kansas. The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiffs seek statutory damages of

up to $2,000,000 per counterfeit mark, statutory damages of up to $100,000 per infringing domain name, actual damages, presumed damages, disgorgement of profits, treble damages, attorneys' fees, and punitive damages .

25.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

26.     Kansas law applies to Plaintiffs' state-law claims because Plaintiffs are headquartered and/or reside in Kansas, Plaintiffs' goodwill and brand management operations are centered in Kansas, and the injury to Plaintiffs' business, reputation, and intellectual property was directed at and felt in Kansas. To the extent the law of another state may apply to any particular claim or transaction, Plaintiffs reserve the right to identify and assert such law.

27.     This Court has personal jurisdiction over the Event Defendants because, on information and belief, the Event Defendants have transacted business, committed tortious acts, and/or caused injury within this judicial district. Specifically, the Event Defendants organized, promoted, and conducted infringing events and sold infringing merchandise using Lowrider Ventures' LOWRIDER® marks, causing direct injury to Plaintiffs in this district where Plaintiffs reside and/or are headquartered and from which they manage the LOWRIDER® brand.

28.     This Court has personal jurisdiction over the Venue Defendants because, on information and belief, each Venue Defendant entered into agreements to host 2026 Throwback Tour events it knew or should have known used Lowrider Ventures' LOWRIDER® marks without authorization, and those events were designed to attract attendees from across the United States, including Kansas. The effects of the Venue Defendants' contributory infringement, including consumer confusion and injury to Plaintiffs' goodwill and business, were directed at and felt in

this judicial district, where Lowrider Ventures is headquartered, Mr. Fernandez resides, and from which Plaintiffs manage the LOWRIDER® brand nationwide.

29.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL BACKGROUND
## The LOWRIDER® Brand and Trademarks

30.    The LOWRIDER® brand has been in continuous use for nearly five decades, iconic within automotive culture and beyond. In 2026, the Lowrider® Brand celebrated its 49th year of existence.

31.    Lowrider Ventures and its predecessors-in-interest have used the LOWRIDER® mark and related marks in connection with publications, merchandise, and live automotive events, including the famous LOWRIDER SUPERSHOW events held throughout the United States.

32.    The LOWRIDER® marks have become famous and are widely recognized by consumers as identifying the source of automotive events, merchandise, and related goods and services.

33.    Lowrider Ventures owns the following federal trademark registrations for the LOWRIDER® mark and related marks (collectively the "LOWRIDER® Marks"), each of which is valid, subsisting, and incontestable:

| Reg. No. | Mark | Goods/Services | Reg. Date |
|---|---|---|---|
| 1,557,901 | LOWRIDER | Providing on-line non-downloadable magazines in the field of automobiles and the lifestyles of automobile enthusiasts (Class 41) | September 26, 1989 |
| 1,743,278 | LOWRIDER | Clothing; namely, T-shirts, tank tops and caps (Class 25) | December 29, 1992 |
| 1,743,279 | LOWRIDER | Clothing; namely, T-shirts, tank tops and caps (Class 25) | December 29, 1992 |

| Reg. No. | Mark | Goods/Services | Reg. Date |
|---|---|---|---|
| 1,743,113 | LOWRIDER | Publications and printed matter; namely, calendars, posters, art books, and magazines relating to the subject of modified vehicles and vehicle accessories (Class 16) | December 29, 1992 |
| 1,744,874 | LOWRIDER | Entertainment services; namely, show promotion and periodic exhibitions of modified vehicles and vehicle accessories, and arranging and conducting modified vehicle shows (Class 41) | January 5, 1993 |
| 1,757,298 | LOW RIDER | Exhibition and show promotional services; namely, periodic exhibitions of modified vehicles and vehicle accessories, arranging and conducting of trade shows (Class 41) | March 9, 1993 |
| 1,786,707 | LOWRIDER ARTE | Downloadable publications, namely, art books relating to the subject of modified vehicles and vehicle accessories and the cultural milieu associated therewith (Class 9) | August 10, 1993 |
| 2,798,772 | LOWRIDER | Clothing, namely, pants, shorts and jackets (Class 25) | December 23, 2003 |
| 4,172,673 | LOWRIDER | Hats; Hooded sweatshirts; Shirts; Sport shirts; Sports pants; Sweaters; Sweatshirts (Class 25) | July 10, 2012 |
| 4,643,632 | LOWRIDER | Providing a website featuring non-downloadable magazines featuring content of interest to enthusiasts of modified vehicles and general automotive enthusiasts (Class 41) | November 25, 2014 |
| 5,645,588 | LOWRIDER | Entertainment services, namely, an ongoing series featuring automobiles and the lifestyles of automobile enthusiasts provided through television and various platforms across multiple forms of transmission media (Class 41) | January 1, 2019 |
| 7,115,184 | LOWRIDER GARAGE | Entertainment services, namely, ongoing multimedia programs in the field of general interest, distributed via various platforms across multiple forms of transmission media; providing ongoing television programs all featuring subjects of general human interest (Class 41) | July 18, 2023 |

34.    In addition to the registrations listed in the table above, Plaintiff Lowrider Ventures owns U.S. Trademark Registration No. 1,996,917 for the LOWRIDER® mark in International Class 9, covering musical sound recordings and musical video recordings, registered on August 27, 1996, on the Principal Register. Lowrider Ventures also has a pending application, Serial No.

97/594,408, for the LOWRIDER GARAGE mark covering International Classes 9, 25, 38, 41, and 42 (digital media, clothing, telecommunications, entertainment, and technology services), which further demonstrate the breadth of Lowrider Ventures' LOWRIDER® brand portfolio. A true and correct copy of the pending application is attached hereto as **Exhibit A**. A true and correct copy of the assignment of these registrations is attached hereto as **Exhibit B**.

35.     The LOWRIDER® Marks possess immense goodwill and are inherently distinctive and/or have acquired secondary meaning in the minds of consumers as identifying the source of Lowrider Ventures' goods and services.

36.     The LOWRIDER SUPERSHOW™ mark has been in continuous use in connection with live automotive exhibition events for nearly five decades and has acquired strong secondary meaning in the minds of consumers as identifying Lowrider Ventures' and its predecessor's official event series. Lowrider Ventures and its predecessors have invested millions of dollars in advertising, promoting, and producing LOWRIDER SUPERSHOW™ events across the United States, attracting hundreds of thousands of attendees over the years. The LOWRIDER SUPERSHOW™ mark has been the subject of extensive unsolicited media coverage in automotive, lifestyle, and mainstream publications. Consumers associate the LOWRIDER SUPERSHOW™ mark exclusively with Lowrider Ventures' and its predecessor's official events, as evidenced by the actual consumer confusion documented herein.

### The GOLO MAN® Trademark

37.     In addition to the LOWRIDER® Marks, Lowrider Ventures owns the GOLO MAN® trademark.

38.     Lowrider Ventures owns the following federal trademark registrations for the GOLO MAN® mark and design (the "GOLO MAN® Marks"), each of which is valid and

subsisting. These registrations incorporate the GOLO MAN design element and share registration

numbers with certain LOWRIDER® mark registrations listed above, as the GOLO MAN design

has historically been used in conjunction with the LOWRIDER® brand:

| Reg. No. | Mark | Goods/Services | Reg. Date |
|---|---|---|---|
| 1,744,874 | GOLO MAN (Design) | Entertainment services; namely, show promotion and periodic exhibitions of modified vehicles and vehicle accessories, and arranging and conducting modified vehicle shows (Class 41) | January 5, 1993 |
| 1,743,279 | GOLO MAN (Design) | Clothing; namely, T-shirts, tank tops and caps (Class 25) | December 29, 1992 |
| 1,743,113 | GOLO MAN (Design) | Providing on-line publications in the nature of magazines relating to the subject of modified vehicles and vehicle accessories (Class 41) | December 29, 1992 |

True and correct copies of the assignment of these registrations is attached hereto as **Exhibit C**.

39.     The GOLO MAN® Marks have been in continuous use in commerce in connection

with collectible figurines, dolls, entertainment services, clothing, and merchandise sold in

association with the LOWRIDER® brand, and have acquired distinctiveness and secondary

meaning in the minds of consumers.

**The DelRio License Agreements and Their Expiration**

40.     Lowrider Ventures, through its predecessors-in-interest, previously authorized

Defendant DelRio Marketing, Inc. as a licensee to organize, operate, promote, and host automotive

events in connection with the LOWRIDER® brand pursuant to an Event License Agreement dated

April 6, 2021 (the "DelRio Event License Agreement").

41.     Under the DelRio Event License Agreement, DelRio was granted a limited, non-

exclusive, fee-bearing, revocable, and non-transferable right and license to use the LOWRIDER®

Marks (the "Licensed Property") at and within licensed events in the United States during the term of the agreement.

42.     The DelRio Event License Agreement, as amended by Amendment No. 3 dated January 1, 2024, extended the term of the agreement through December 31, 2025.

43.     The DelRio Event License Agreement provides, at Section 13(i), that upon the expiration or termination of the agreement for any reason: "(1) Licensee shall immediately cease all use of the Licensed Property and shall have no further authority to promote, advertise, conduct, administer, or otherwise operate the Licensed Events; and (2) Licensee shall assign and transfer to Licensor any domain name registered by Licensee bearing or containing any trademark or service mark of Licensor."

44.     Lowrider Ventures, through its predecessors-in-interest, also authorized Defendant DelRio as a licensee to manufacture, promote, advertise, sell, and distribute merchandise bearing the LOWRIDER® Marks pursuant to a Merchandise License Agreement dated July 1, 2019 (the "DelRio Merchandise License Agreement").

45.     The DelRio Merchandise License Agreement, as amended by Amendment No. 4 dated January 1, 2024, extended the term of the agreement through December 31, 2025.

46.     The DelRio Merchandise License Agreement provides, at Section 13.2, that "[u]pon the expiration or termination of this Agreement, Licensee shall not Distribute the Licensed Articles containing or including the Licensed Property or any product that may infringe upon Licensor's proprietary rights, or use any name, logo or design that is substantially or confusingly similar to Licensor's trademarks on any product in any place whatsoever."

47.     On August 8, 2024, Motor Trend Group, LLC revoked its license to DelRio to permit third parties to organize, operate, promote, and/or host any sanctioned events in connection

with the LOWRIDER brand, requiring that all officially sanctioned events be operated, managed, and organized directly by DelRio.  Accordingly, from and after August 8, 2024, no third party has been authorized to organize, operate, promote, or host any sanctioned events in connection with the LOWRIDER® brand.

48.    The DelRio Event License Agreement and the DelRio Merchandise License Agreement both expired by their terms on December 31, 2025.  As of the date of the filing of this Complaint, DelRio is no longer a licensee and has no authority to use the LOWRIDER® Marks in any manner.

**DelRio's Continued Unauthorized Use After License Expiration**

49.    Despite the expiration of the DelRio Event License Agreement and the DelRio Merchandise License Agreement on December 31, 2025, DelRio, and its co-owner, Brian Acquafresca, have continued to use the LOWRIDER® Marks without authorization, in direct violation of the post-termination obligations set forth in those agreements.

50.    Specifically, DelRio continues to own and operate, through Acquafresca, the following websites that incorporate the LOWRIDER® Marks: (a) lowriderexperience.com (prominently features the LOWRIDER® marks and promotes events and merchandise using the LOWRIDER® brand); (b) lowriderbrand.com (using the LOWRIDER® Marks without authorization); and (c) www.delriobrands.com (sells and promotes LOWRIDER®-branded clothing and merchandise, and displays a logo that is confusingly similar to Lowrider Ventures' registered GOLO MAN® mark).

51.    In addition to using the LOWRIDER® Marks on these websites, DelRio's website at www.delriobrands.com contains the false and misleading statement that "DelRio is responsible for the production, distribution, and retail of Lowrider Magazine." Lowrider Magazine is owned

by Plaintiffs, not DelRio. DelRio has no authorization to produce, distribute, or sell Lowrider Magazine, and its representation to the contrary is false and designed to deceive consumers into believing DelRio has an ongoing affiliation with or authorization from Lowrider Ventures with respect to the LOWRIDER® brand and Lowrider Magazine. Furthermore, www.delriobrands.com prominently displays a logo that is confusingly similar to Lowrider Ventures' registered GOLO MAN® mark, and uses the logo in connection with the sale and promotion of clothing and merchandise, including products branded as "GOLOMAN"; directly trading on the goodwill of Lowrider Ventures' GOLO MAN® trademark. Printouts and screenshots of exemplar pages from www.delriobrands.com are attached hereto as **Exhibit D**.

52.     Further, lowriderbrand.com contains direct hyperlinks to Lowrider Ventures' official social media accounts, including @lowridermagazine on Instagram, /lowridermag on Facebook, /lowridermagazine on YouTube, @officiallowridermagazine on TikTok, and @LowriderMag on X (formerly Twitter). By embedding links to Lowrider Ventures' social media accounts on an unauthorized merchandise website, DelRio and/or its affiliates create the false impression that lowriderbrand.com is an official or authorized sales channel for LOWRIDER®-branded merchandise. The website also lists eight additional unauthorized "Lowrider Supershow" events for 2026, including events in Dallas, Indianapolis, Milwaukee, Portland, Sacramento, Phoenix, Houston, and Oklahoma City, none of which are authorized by Lowrider Ventures.

53.     DelRio's continued unauthorized use of the LOWRIDER® Marks and the GOLO MAN® Marks constitutes counterfeiting, trademark infringement, and cybersquatting.

## Defendants' Other Infringing Activities

54.     At no time have Defendants GoLo, Ochoa, Motorsport Showcase Events, Lowrider Events, Artemis Promotions, Impalas Magazine, or John Munoz d/b/a JM Showcase been

authorized by Plaintiffs to use the LOWRIDER® Marks or GOLO MAN® Marks in connection with any events, merchandise, or other goods or services.  These Defendants have never been parties to any license agreement with Plaintiffs authorizing the use of the LOWRIDER® or GOLO MAN® intellectual property.

55.    Any events organized or merchandise sold using the LOWRIDER® Marks or the Golo MAN® Marks without express written authorization from Lowrider Ventures constitute counterfeiting or trademark infringement.

56.    Beginning in or around late 2025, Defendants GoLo, Ochoa, and Motorsport Showcase launched the 2026 Throwback Tour,  using the LOWRIDER® Marks without authorization.

57.    Ochoa publicly announced the 2026 Throwback Tour: "Introducing the 2026 Throwback Tour!  All roads lead to Vegas for this Ten City Tour across the country!"

58.    GoLo operates the website www.goloentertainment.com in conjunction with other Event Defendants, through which they promote and sell tickets to events using the LOWRIDER® Marks.  A copy of relevant pages from the www.goloentertainment.com website is attached as **Exhibit E**.

59.    Event Defendants' infringing events include, but are not limited to the following: "Tampa Lowrider Supershow" scheduled for April 18, 2026, at Florida State Fairgrounds; "Charlotte Lowrider Supershow" scheduled for May 30, 2026, at Cabarrus Arena & Events Center; "Las Vegas Lowrider Supershow" scheduled for September 19, 2026, at Las Vegas Convention Center; "Salt Lake City Supershow" scheduled for July 18, 2026, at the Mountain America Exposition Center; "Albuquerque Super Show" scheduled for June 7, 2026, at the Albuquerque Convention Center.  Additionally, Acquafresca uses websites like gearheadevents.com to further

promote lowrider events to the benefit of GoLo Entertainment and Motorsport Showcase, such as the March 7, 2026 Town of Superior, Arizona car show, which serves as an "event qualifier for the 2026 Las Vegas Lowrider Supershow".

60.    Event Defendants prominently use the term "LOWRIDER SUPERSHOW" in their promotional materials, flyers, and website in a manner that is virtually identical to the famous LOWRIDER mark.

61.    Event Defendants' promotional materials feature the LOWRIDER® name in prominent lettering that is confusingly similar to the LOWRIDER® Marks.

62.    Event Defendants have established a "Lowrider Hall of Fame" through GoLo that mimics Plaintiffs' Lowrider Hall of Fame, further contributing to consumer confusion.

63.    Ochoa has publicly identified himself as "Lowrider Events Tour Director," creating the false impression that he is affiliated with or authorized by Plaintiffs.

### The Coordinated Network of Event and Venue Defendants

64.    Event Defendants have organized and operated the 2026 Throwback Tour through a coordinated network of event organizers, each of whom directly uses Lowrider Ventures' LOWRIDER® Marks.

65.    Defendant Lowrider Events Inc. is the primary operator of the Tampa and Charlotte "Lowrider Supershow" events. Specifically: (a) Lowrider Events operates www.lowriderevents.com, a domain name that incorporates the LOWRIDER® mark in its entirety; (b) Lowrider Events promotes events using the exact marks "TAMPA LOWRIDER SUPERSHOW" and "CHARLOTTE LOWRIDER SUPERSHOW," which are identical to Lowrider Ventures' registered LOWRIDER® mark; (c) Lowrider Events creates and disseminates promotional flyers prominently featuring the LOWRIDER® mark in large lettering; (d) Lowrider

Events' Instagram profile (@lowrider_events_inc) explicitly states it is "The Official Tampa & Charlotte Lowrider SuperShow 2026 IG page," falsely implying official authorization from Lowrider Ventures; (e) Lowrider Events' website states attendees can "Get qualified for the Throwback Tour 2026" at their events, falsely representing a connection to officially sanctioned events; and (f) the official Lowrider Magazine Facebook page has shared Lowrider Events' promotional posts, creating actual confusion between authorized and unauthorized events.

66.     Defendant Artemis Promotions is the primary organizer of the Albuquerque, Salt Lake City, and Las Vegas Supershows.  Specifically: (a) Artemis Promotions is listed as the official event organizer for the "Las Vegas Lowrider Super Show 2026" on Facebook—the flagship event of the 2026 Throwback Tour using Lowrider Ventures' famous mark; (b) Artemis Promotions creates Facebook event pages for "Las Vegas Lowrider Super Show" that direct registration to www.goloentertainment.com; (c) Artemis Promotions encourages registration stating "Registration is open www.goloentertainment.com" for the "Las Vegas Lowrider Super Show 2026," directly facilitating consumer confusion; and (d) Artemis Promotions' promotional materials incorporate the LOWRIDER® mark alongside other infringing partners' logos.

67.     Defendant John Munoz d/b/a JM Showcase is the organizer of the "Reno Takeover" event. Specifically: (a) John Munoz organizes the "RENO TAKEOVER" at Reno-Sparks Convention Center as part of the 2026 Throwback Tour; (b) John Munoz is listed on GoLo's website as "JM TAKEOVER JOHN MUNOZ" with the event described as "Event Qualifier for the 2026 Las Vegas Lowrider Supershow"; (c) This language falsely implies official sanction or affiliation with Plaintiffs' LOWRIDER® events; and (d) The event is listed on the same promotional flyers that prominently feature the LOWRIDER® mark.

68.     The Event Defendants are not operating independently but as a coordinated network, as demonstrated by: (a) All partners' logos appear together on the same promotional flyers with the LOWRIDER® mark; (b) All events direct registration to www.goloentertainment.com, demonstrating centralized control by Defendants GoLo and Ochoa; (c) Events are described as "qualifiers" for each other, creating an appearance of an official tour; (d) Ochoa's phone number appears on promotional materials across all events; and (e) The sponsors SX70SC and Luxor (House of Kolor) appear on virtually every promotional flyer for the 2026 Throwback Tour, creating the impression of a legitimate, sponsored event series.

69.     Venue Defendants (Las Vegas Convention and Visitors Authority, Reno-Sparks Convention & Visitors Authority, Salt Lake County, City of Albuquerque, and Town of Superior) own and/or operate the venues at which Event Defendants' infringing 2026 Throwback Tour events are scheduled to take place or have taken place.

70.     Each Venue Defendant, by entering into agreements to host the 2026 Throwback Tour events, has provided the necessary marketplace and physical infrastructure for the direct infringers to promote, advertise, and conduct events using Lowrider Ventures' LOWRIDER® Marks without authorization.

71.     On information and belief, each Venue Defendant knew or had reason to know that the events to be hosted at its facility or facilities involved the unauthorized use of Lowrider Ventures' LOWRIDER® Marks. Event Defendants' promotional materials, flyers, and website at www.goloentertainment.com and elsewhere prominently feature the LOWRIDER® Marks and are publicly available, and would have been provided to or reviewed by the Venue Defendants in connection with booking and authorizing the events.

72. On information and belief, each Venue Defendant continued to supply its venue(s) and services for the 2026 Throwback Tour events despite its knowledge of, or willful blindness to, Event Defendants' unauthorized use of the LOWRIDER® Marks.

**Event Defendants' Online Presence and Use of the LOWRIDER® Mark**

73. All Event Defendants, and their associated websites and social media accounts, actively use the LOWRIDER® Marks in event titles, branding, promotions, and/or merchandise. The Venue Defendants use the LOWRIDER® Marks descriptively in official event calendar listings. No Defendant appears to use "LOWRIDER" as its corporate or trade name, except Lowrider Events, whose corporate name, domain name, and social media handles directly incorporate the LOWRIDER® mark. The following is a defendant-by-defendant summary of each Defendant's current public use of the LOWRIDER® Marks on websites and social media profiles.

74. Defendants GoLo, Motorsport Showcase, and Ochoa operate the websites goloentertainment.com and motorsportshowcase.com. These websites make heavy use of Lowrider Ventures' LOWRIDER® marks in all 2026 Throwback Tour event titles, including but not limited to "Cinco de Mayo Lowrider Fiesta," and "Las Vegas Lowrider Supershow". The goloentertainment.com website explicitly states events use "LOWRIDER and LOWRIDER SUPER SHOWS trademarks . . . under license." These Defendants also operate Instagram accounts @golo.events and @motorsportshowcase, and related Facebook pages, which prominently feature "Lowrider Super Show" branding, flyers, and hashtags. Ochoa has been publicly referred to, and has held himself out, as "Lowrider Events Tour Director" on promotional materials disseminated through these online channels. Printouts and screenshots of exemplar pages from www.goloentertainment.com are attached hereto as **Exhibit J**.

75.    In addition, the footer of every page on goloentertainment.com contains direct hyperlinks to Lowrider Ventures' official social media accounts, specifically facebook.com/lowridermag/ and instagram.com/lowridermagazine. These accounts do not belong to GoLo or any other Defendant. By embedding links to Lowrider Ventures' official social media accounts in the footer of GoLo Entertainment's website, GoLo creates the false impression that it is officially affiliated with, endorsed by, or authorized by Lowrider Ventures and the LOWRIDER® brand. A reasonable consumer visiting goloentertainment.com would conclude GoLo is the official operator of the LOWRIDER® brand based on these integrated links to Lowrider Ventures' social media.

76.    The navigation menu on goloentertainment.com also includes a "Shop" link that directs consumers directly to lowriderbrand.com; the unauthorized LOWRIDER®-branded merchandise website operated by Defendant DelRio. This creates a seamless commercial pipeline from GoLo's infringing event promotion website to DelRio's unauthorized merchandise sales, and demonstrates active coordination between GoLo/Ochoa and DelRio/Acquafresca in commercializing the LOWRIDER® mark without authorization.

77.    The goloentertainment.com homepage falsely appropriates Lowrider Ventures' nearly half-century of brand history, goodwill, and reputation as its own, reinforcing the false impression that GoLo is the continuation or successor of the LOWRIDER® brand.

78.    GoLo's "About" page contains a purported disclaimer stating that it is "no longer affiliated with Lowrider Magazine and its new owners." However, this disclaimer is contradicted by, and reinforces rather than dispels, the false impression of affiliation. On the same website, GoLo boasts of "having been responsible for helping produce one of the largest and most admired Supershows in LRM's 48-year history," describes the separation as "closing a chapter on good

terms," and continues to link directly to Lowrider Ventures' official social media accounts. Rather than clarifying the lack of affiliation, this purported disclaimer creates the misleading impression that GoLo is the legitimate successor to the LOWRIDER® supershow franchise.

79. Defendant Lowrider Events Inc. and Carlos Bickers operate the website www.lowriderevents.com, whose domain name itself incorporates the LOWRIDER® mark in its entirety. The entire website is built around the "Tampa Lowrider Supershow" and "Charlotte Lowrider Supershow" as core event brands for the 2026 Throwback Tour, with full LOWRIDER® mark usage throughout logos, headers, and marketing copy. Lowrider Events also operates the Instagram account @lowrider_events_inc, a handle that directly incorporates the LOWRIDER® mark and the Facebook page "Lowrider Events Inc." All posts, flyers, and bios on these social media accounts heavily feature "Lowrider Supershow" branding. Printouts and screenshots of relevant pages from www.lowriderevents.com are attached hereto as **Exhibit F**.

80. Defendant Artemis Promotions operates the website newmexicosupershow.com as its primary promotional site. This website uses the designations "Albuquerque Lowrider Super Show," "Salt Lake City Supershow," and "Las Vegas Lowrider Super Show 2026" in event titles and graphics as part of the 2026 Throwback Tour, with the LOWRIDER® mark appearing prominently in banners, schedules, and ticket promotions. Artemis Promotions also operates the Instagram account @albuquerquesupershow and related Facebook pages. Event announcements and posts on these accounts consistently include "Lowrider Super Show" titles and #lowrider hashtags. Printouts and screenshots of relevant pages from newmexicosupershow.com and Artemis Promotions' Facebook page are attached hereto as **Exhibit G**. Artemis Promotions is not authorized to use the LOWRIDER® Marks.

81.    Defendant Impalas Magazine operates the website www.impalasmagazine.com, which promotes the "Stockton Supershow" and "Washington Supershow" as part of the 2026 Throwback Tour, with explicit "Lowrider" branding in event listings, flyers, and cross-promotions with other Lowrider Supershow dates. Impalas Magazine also operates the Instagram account @impalasmagazine and event-specific social media references, with posts and stories using "Lowrider Super Show" descriptors and related imagery.

82.    Impalas Magazine's website prominently promotes "Golo Entertainment presents The 'Las Vegas Lowrider Super Show'" with a "REGISTER NOW" button linking to goloentertainment.com. The website includes a disclaimer stating: "All events are independently organized and operated; not affiliated with, endorsed by, sponsored by, or associated with Lowrider™." This disclaimer is notable for two reasons: first, it uses the ™ symbol after "Lowrider," thereby acknowledging the LOWRIDER mark belongs to another party; and second, despite this acknowledgment, Impalas Magazine continues to use the LOWRIDER® mark commercially to promote and sell tickets to the infringing events. This contradictory disclaimer constitutes an admission that Impalas Magazine knows the LOWRIDER® mark belongs to Lowrider Ventures, yet willfully continues to use it without authorization. Printouts and screenshots of relevant pages from www.impalasmagazine.com are attached hereto as **Exhibit H**.

83.    Defendant John Munoz d/b/a JM Showcase does not maintain a dedicated public business website; however, promotions for the "Reno Takeover" / "Reno Supershow" appear on Munoz's personal and event-specific pages tied to the Reno event. Munoz operates the personal Instagram account @_johnmunoz1965, which lists "So~Low Riderz – Founder" and promotes the "Reno Takeover" and "Reno Supershow" with lowrider car culture focus and occasional

"Lowrider Showcase" phrasing in captions and shared flyers.  Munoz is not authorized to use the LOWRIDER® Marks.

84.    The Venue Defendants use Plaintiff's LOWRIDER® mark in their official online event calendars and venue listings, as follows: (a) LVCVA lists the September 19, 2026 event as "Las Vegas Lowrider Supershow" on its websites lvcva.com and vegasmeansbusiness.com; (b) RSCVA lists the May 16, 2026 event as "Reno Supershow" with lowrider-themed descriptions and imagery on visitrenotahoe.com; (c) Salt Lake County, on its Mountain America Facebook page, lists the July 18, 2026 event as the "Salt Lake City Lowrider Supershow 2026"; and (d) the City of Albuquerque lists the "Albuquerque Super Show" (June 7, 2026) and "Cinco de Mayo Lowrider Fiesta" (May 2, 2026) at albuquerquecc.com, on its events/calendars page. Visitalbuquerque.org, Albuquerque's official destination organization's website, also advertises the June 7, 2026 event as the "Albuquerque Super Show Throwback."  Further, the Town of Superior held the March 7, 2026 "Superior Car Show On Mainstreet" with lowrider references in promotional materials as illustrated by a posting on gearheadevents.com.  On information and belief, the Town of Superior reviewed and knew of that posting. Printouts and screenshots of certain of the Venue Defendants' official event calendar listings, and Facebook pages, and gearheadevents.com postings are attached hereto as **Exhibit I**.

85.    The foregoing online presence demonstrates a consistent pattern: the Event Defendants are the primary users of the LOWRIDER® Marks in active commercial branding for the 2026 Throwback Tour events and, in DelRio's case, continued merchandise sales. Their usage ranges from event-title descriptors to direct incorporation of the LOWRIDER® Marks in domain names, social media handles, and product sales. The Venue Defendants use the marks in official listings that further evidence their knowledge of the infringing nature of the events hosted at their

facilities. All such uses are public and ongoing on the reviewed websites and social media channels as of the date of this Complaint.

**LOWRIDER® Trade Dress, Distinctive Slogans, and Defendants' Advertising Activity**

86.     In addition to the word marks described above, the LOWRIDER® brand possesses a distinctive trade dress; the total image and overall commercial impression created by the combination of visual elements historically associated with the LOWRIDER® brand. The LOWRIDER® trade dress includes the following protectable elements, each of which has been in continuous use for nearly five decades and has acquired strong secondary meaning in the minds of consumers: (a) a signature color palette of black or dark backgrounds with gold, yellow, and metallic accent colors and chrome elements; (b) Old English and Gothic-style typography for event titles, branding, and promotional headers; (c) chrome and metallic lowrider vehicle photography as centerpiece imagery in event promotions and brand materials; (d) the GOLO MAN® character figure as a recurring visual element; and (e) a distinctive event promotional flyer format featuring dark backgrounds, featured vehicle photographs, stylized event titles in Old English or Gothic typography, gold or metallic accent borders, and venue and date information presented in a specific visual hierarchy. The combination of these elements creates a distinctive overall commercial impression that consumers associate exclusively with Lowrider Ventures' LOWRIDER® brand.

87.     Defendants GoLo Entertainment, Motorsport Showcase, and Richard Ochoa have replicated every element of Plaintiff's LOWRIDER® trade dress on their websites goloentertainment.com and motorsportshowcase.com and in their social media advertising on Instagram (@golo.events and @motorsportshowcase) and Facebook. Specifically, these Defendants' websites and social media posts use black backgrounds with gold and metallic accent text and chrome-style elements; Old English and Gothic-style typefaces for event titles and

headers; chrome and metallic lowrider vehicle photography as centerpiece imagery; a stylized figure confusingly similar to the GOLO MAN® design as a recurring visual element throughout the site; and event promotional flyer designs that follow the same dark-background, metallic-imagery, Old English-typography, and gold-accent-border template historically associated with official LOWRIDER® promotional materials. The overall commercial impression created by Defendants' websites and social media is that of an official LOWRIDER® brand property.

88.    Defendants DelRio and Brian Acquafresca have replicated the complete LOWRIDER® brand visual identity on lowriderbrand.com, including logo designs, color schemes, typography, and product presentation format that create the overall commercial impression that lowriderbrand.com is Lowrider Ventures' authorized retail outlet. Merchandise sold on the site —including hoodies, T-shirts, hats, and other apparel — reproduces the distinctive visual elements of Plaintiff's official merchandise, including specific logo designs, graphic layouts, and the GOLO MAN® figure on "GOLOMAN" products. The site's footer reproduces the format of an official copyright notice, and its navigation structure mirrors the layout and organization of an official brand website. On delriobrands.com, the header brands "LOWRIDER CLOTHING" as a product category with a direct link to lowriderbrand.com, and "GOLOMAN" products replicate the visual style and design elements of Plaintiff's GOLO MAN® mark.

89.    Defendant Lowrider Events Inc. has replicated Plaintiff's LOWRIDER® trade dress on its website lowriderevents.com and social media accounts (@lowrider_events_inc on Instagram and "Lowrider Events Inc." on Facebook), including dark backgrounds, chrome and metallic car imagery, Old English and Gothic typography for event titles, and event flyer designs that follow the same promotional template historically associated with official LOWRIDER® events.

90.     Defendants Artemis Promotions and Impalas Magazine have similarly replicated the LOWRIDER® trade dress in their event promotions on newmexicosupershow.com, impalasmagazine.com, and their respective social media accounts, including the characteristic dark-background event flyers with chrome car imagery, Old English typography, and gold or metallic accent elements associated with official LOWRIDER® events.

91.     In addition to the LOWRIDER® word marks and trade dress, the LOWRIDER® brand is associated with distinctive slogans and program names that have acquired secondary meaning through long and continuous use in commerce. These distinctive slogans and program names include: (a) "Lowrider Hall of Fame" — the name of Lowrider Ventures' program honoring distinguished members of the lowrider community, which has been in use for decades; (b) "Lowrider Events Tour Director" — the professional title historically associated with Lowrider Ventures' official event management; (c) "Get qualified for the Throwback Tour 2026" — a call-to-action advertising phrase used to promote participation in tour events; (d) "The Largest and Most Admired Supershows" — a superlative marketing phrase historically associated with Plaintiff's official LOWRIDER SUPERSHOW™ events; (e) "Lowrider Supershow" — used as a distinctive event tagline and branding element beyond the trademark itself; and (f) "Throwback Tour" — the tour name adopted by the Event Defendants to brand the 2026 event series. Each of these slogans and program names has been used in Lowrider Ventures' advertising and is associated in the minds of consumers with the official LOWRIDER® brand.

92.     Defendants have used the foregoing slogans and program names in their advertising as follows: GoLo describes its events as "The Largest and Most Admired Supershows" on its About page; Defendant Richard Ochoa has used the title "Lowrider Events Tour Director" on promotional materials distributed through social media and websites; Defendant Lowrider Events

uses the phrase "Get qualified for the Throwback Tour 2026" as a banner call-to-action on lowriderevents.com; and all Event Defendants use "Lowrider Supershow" and "Throwback Tour" as advertising taglines throughout their websites, social media accounts, and event flyers.

93.    All of the foregoing infringing conduct by Defendants — including the use of Lowrider Ventures' trademarks, trade dress, and slogans on websites, social media platforms, event flyers, merchandise listings, and promotional materials — constitutes advertising activity. Each Defendant's website is a notice published to the general public about Defendants' goods, products, and services for the purpose of attracting customers and supporters. Each Defendant's social media account is a medium through which Defendants broadcast promotional content to specific market segments for commercial purposes. Each event flyer and promotional graphic is advertising material disseminated to the public. Each merchandise listing on lowriderbrand.com and delriobrands.com is commercial advertising of goods offered for sale. Defendants' infringing use of Lowrider Ventures' marks, trade dress, and slogans occurs in the course of Defendants' advertising of their events, merchandise, and services to the consuming public.

94.    All of the infringing conduct alleged herein commenced or materially changed after December 31, 2025, the date on which the DelRio Event License Agreement and DelRio Merchandise License Agreement expired. Prior to that date, DelRio's use of the LOWRIDER® marks was authorized under its license agreements, and no other Event Defendant was authorized to use Lowrider Ventures' marks at any time. The post-expiration conduct alleged herein constitutes new and distinct acts of infringement — not a continuation of previously authorized use — and represents fresh violations of Lowrider Ventures' intellectual property rights occurring during the current period.

**Evidence of Actual Consumer Confusion**

95.     Defendants' infringing activities have caused actual confusion among consumers regarding the source, sponsorship, and affiliation of Defendants' events.

96.     Social media comments demonstrate widespread confusion among consumers. For example, one consumer commented: "So Impalas Magazine is the schedule for vegas or you guys. So confused.  I always schedule my vacation for vegas so we need to know the schedule."

97.     Another consumer commented: "I say the same thing whats the deal with all the different supershows now."

98.     Yet another consumer asked: "How come every show is a super show that should just be the last show in Vegas."

99.     Consumer confusion extends to whether Defendants' events are "sanctioned" by Plaintiffs.  One consumer asked: "Is Superior going to be a sanctioned show?" to which Defendant Ochoa responded: "Yes! Superior can get you to Las Vegas!"

100.    Another consumer asked: "Is Stockton sanctioned show?  Any other plans for additional California shows?" to which Defendant Ochoa responded: "yes, this show is a qualifier for Vegas along with San Mateo for now." Documentation of the foregoing instances of actual consumer confusion, including screenshots of social media comments and consumer communications, is attached hereto as **Exhibit K**.

**Defendants' Infringement of the GOLO MAN® Mark**

101.    The "GoLo" name itself derives from the GOLO MAN® trademark.

102.    Use of the "GoLo" name by Defendants in connection with lowrider events directly trades on the goodwill of the GOLO MAN® Marks.

103.    Event Defendants adopted the name "GoLo Entertainment" with full knowledge that "GoLo" and "GOLO MAN" are trademarks associated with the LOWRIDER® brand, and did so with the intent to trade on the goodwill associated with those marks.

104.    At the 2025 Las Vegas Supershow, individuals associated with the GoLo Entertainment brand "strategically wore 'YELLOW GOLO' GOLO MAN BRANDED VISORS to identify as the 'new wave of lowrider'" while judging, managing, and operating the show and "informing the public about the new movement."

105.    Use of the "GoLo" name by Defendants is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, or affiliation of Defendants' business and events with Lowrider Ventures and its GOLO MAN® mark.

### Event Defendants' Defamatory Statements

106.    In furtherance of their coordinated scheme to misappropriate Lowrider Ventures' intellectual property, divert business from Lowrider Ventures, and undermine Plaintiffs' reputation in the lowrider community, upon information and belief, Event Defendants have made false and defamatory statements about Lowrider Ventures and Carlos Fernandez to third parties.

107.    Upon information and belief, Event Defendants have published false statements of fact concerning Mr. Fernandez falsely implying he does not legitimately own the LOWRIDER® intellectual property, falsely implying he acquired the LOWRIDER® brand through improper or illegitimate means, falsely implying he is unqualified to operate the LOWRIDER® brand, falsely implying incompetence and unfitness in Mr. Fernandez's professional capacity, falsely implying he is dishonest and fails to deliver on promises, and falsely implying he is engaging in fraud and acting in bad faith to harm the lowrider community.

108. Upon information and belief, Event Defendants have published false statements of fact concerning Lowrider Ventures, falsely implying Lowrider Ventures does not legitimately own the LOWRIDER® brand; disparaging the quality of Lowrider Ventures' goods and services, including events; falsely stating Lowrider Ventures' business is no longer viable or operational; falsely implying Lowrider Ventures' LOWRIDER® events are illegitimate or unauthorized; falsely implying Lowrider Ventures has abandoned the lowrider community; falsely accusing Lowrider Ventures of operating in bad faith and exploiting the lowrider community; falsely accusing Lowrider Ventures of intellectual property theft, fraud, misrepresentations, and misappropriation; and falsely stating Lowrider Ventures has no legitimate business relationships or customer base.

109. Lowrider Ventures legitimately acquired all rights in the LOWRIDER® intellectual property from Hearst Autos, Inc., and Mr. Fernandez is the rightful owner and operator of the LOWRIDER® brand.

110. Upon information and belief, Event Defendants made the foregoing statements with knowledge of their falsity, or with reckless disregard for their truth or falsity.

111. Upon information and belief, Event Defendants made the foregoing statements with malice and with the intent to harm Lowrider Ventures and Mr. Fernandez, to divert business from Lowrider Ventures, and to promote Event Defendants' competing unauthorized events.

112. Upon information and belief, the foregoing statements were published to third parties, including members of the lowrider community, potential customers, event attendees, exhibitors, sponsors, and business partners.

113. The statements concerning Mr. Fernandez constitute defamation *per se* because they (a) charge Mr. Fernandez with dishonesty, fraud, and lack of integrity; (b) tend to injure Mr.

Fernandez in his trade, business, or profession; and (c) charge Mr. Fernandez with conduct that would tend to subject him to hatred, contempt, or ridicule.

114. The statements concerning Lowrider Ventures' business constitute trade libel and business disparagement because they are false statements of fact that disparage the quality of Lowrider Ventures' goods and services and Lowrider Ventures' title to its intellectual property.

115. As a direct and proximate result of Event Defendants' defamatory statements, Lowrider Ventures and Mr. Fernandez have suffered damages, including but not limited to: (a) Injury to Lowrider Ventures' business reputation and goodwill; (b) Injury to Mr. Fernandez's personal and professional reputation; (c) Loss of customers, event attendees, exhibitors, sponsors, and business partners; (d) Loss of prospective business relationships; (e) Emotional distress, mental anguish, humiliation, and embarrassment suffered by Mr. Fernandez; and (f) Other consequential damages.

116. Upon information and belief, Event Defendants' defamatory statements were made as part of the coordinated conspiracy alleged herein and in furtherance of Event Defendants' scheme to misappropriate Lowrider Ventures' intellectual property and divert business from Lowrider Ventures.

## FIRST CAUSE OF ACTION
**Federal Trademark Counterfeiting of LOWRIDER® Marks (15 U.S.C. § 1114(1)(a))**
**(Against Event Defendants by Plaintiff Lowrider Ventures)**

117. Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

118. Lowrider Ventures owns valid and enforceable federal trademark registrations for the LOWRIDER® Mark.

119.    Event Defendants have used, and continue to use, in interstate commerce, spurious and counterfeit marks that are identical with, or substantially indistinguishable from, Lowrider Ventures' registered LOWRIDER® Marks, within the meaning of 15 U.S.C. § 1116(d)(1)(B). Event Defendants' marks are not genuine marks applied by or with the authorization of the registrant, but are unauthorized reproductions applied to goods and services of the same type for which Lowrider Ventures' marks are registered.

120.    Event Defendants' use of the LOWRIDER® mark constitutes use of counterfeit marks that are identical to or substantially indistinguishable from Lowrider Ventures' registered marks.

121.    Event Defendants' counterfeit marks are used in connection with the same or substantially similar goods and services for which the LOWRIDER® Marks are registered, namely automotive events, entertainment services, and merchandise.

122.    Event Defendants knew or should have known that their marks were counterfeit and that their use was likely to cause confusion, mistake, or deception.

123.    Event Defendants' use of counterfeit marks was intentional, knowing, and willful.

124.    Event Defendants' use of counterfeit marks occurs in the course of advertising their events and merchandise to the general public through websites, social media accounts, event flyers, and promotional materials, each of which constitutes an advertisement published or broadcast for the purpose of attracting customers or supporters.

125.    By reason of Event Defendants' trademark counterfeiting, Lowrider Ventures is entitled to recover statutory damages of up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed pursuant to 15 U.S.C. § 1117(c).

126. Lowrider Ventures is further entitled to treble damages and attorneys' fees as a matter of right pursuant to 15 U.S.C. § 1117(b) because Event Defendants' counterfeiting was intentional and willful.

127. In the alternative, to the extent any Event Defendant's use of counterfeit marks was not willful, such use was nonetheless without authorization, in violation of Lowrider Ventures' exclusive rights, and in reckless disregard of those rights in the LOWRIDER® Marks.

128. Lowrider Ventures is entitled to ex parte seizure of all counterfeit goods and materials pursuant to 15 U.S.C. § 1116(d).

129. Lowrider Ventures has been damaged and will continue to be damaged by Event Defendants' counterfeiting conduct unless enjoined by this Court.

## SECOND CAUSE OF ACTION
### Federal Trademark Infringement of LOWRIDER® Marks (15 U.S.C. § 1114)
### (Against Event Defendants by Plaintiff Lowrider Ventures)

130. Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

131. Lowrider Ventures owns valid and enforceable federal trademark registrations for the LOWRIDER® Marks.

132. Event Defendants have used, and continue to use, in interstate commerce, reproductions, counterfeits, copies, or colorable imitations of Lowrider Ventures' registered marks in connection with the sale, offering for sale, distribution, and advertising of goods and services, including automotive events and merchandise.

133. Event Defendants' use of the LOWRIDER® Marks and confusingly similar marks on websites such as lowriderexperience.com, lowriderbrand.com, and delriobrands.com, is likely

to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of Event Defendants' events and merchandise.

134.    Event Defendants' acts constitute trademark infringement in violation of 15 U.S.C. § 1114.

135.    Event Defendants' infringing use of the LOWRIDER® Marks occurs in the course of advertising their events and merchandise to the general public through websites, social media accounts, event flyers, merchandise listings, and promotional materials, each of which constitutes an advertisement published or broadcast for the purpose of attracting customers or supporters.

136.    Event Defendants' acts have been willful and deliberate, entitling Lowrider Ventures to enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

137.    In the alternative, to the extent any Event Defendant's infringement was not willful, such infringement was nonetheless without authorization, in violation of Lowrider Ventures' exclusive rights, and in reckless disregard of Lowrider Ventures' rights in the LOWRIDER® marks.

138.    Lowrider Ventures has been damaged and will continue to be damaged by Event Defendants' infringing conduct unless enjoined by this Court.

### THIRD CAUSE OF ACTION
**Federal Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a))**
**(Against Event Defendants by Plaintiff Lowrider Ventures)**

139.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

140.    Event Defendants have used, and continue to use, in interstate commerce, false designations of origin and false or misleading descriptions or representations of fact that are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Event

Defendants with Lowrider Ventures, and as to the origin, sponsorship, or approval of Event Defendants' goods and services by Lowrider Ventures.

141. Event Defendants' use of marks and trade dress confusingly similar to the LOWRIDER® Marks constitutes false designation of origin in violation of 15 U.S.C. § 1125(a).

142. Event Defendants' acts have been willful and deliberate.

143. Event Defendants' false designations of origin and use of marks and trade dress confusingly similar to Lowrider Ventures' LOWRIDER® Marks occur in the course of advertising their events and merchandise to the general public through websites, social media accounts, event flyers, and promotional materials constituting advertisements.

144. In the alternative, to the extent any Event Defendant's conduct was not willful, such conduct was nonetheless without authorization and in reckless disregard of Lowrider Ventures' rights.

145. Lowrider Ventures has been damaged and is likely to continue to be damaged by Event Defendants' conduct unless enjoined by this Court.

146. Event Defendants' false designations of origin have caused and will continue to cause irreparable injury to Lowrider Ventures' goodwill, business reputation, and the distinctiveness of the LOWRIDER® marks.

**FOURTH CAUSE OF ACTION**
**Federal False Advertising (15 U.S.C. § 1125(a)(1)(B))**
**(Against Event Defendants by Plaintiff Lowrider Ventures)**

147. Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

148.     Event Defendants have made false and misleading statements and representations in commercial advertising and promotion regarding the nature, characteristics, and qualities of their events and merchandise.

149.     Specifically, Event Defendants have falsely represented that their events are "sanctioned" shows and "qualifiers" for the Las Vegas Supershow, when in fact Defendants' events have no affiliation with Lowrider Ventures or its official LOWRIDER® event series.

150.     Event Defendants have falsely represented that their "Lowrider Hall of Fame" is a continuation of the Lowrider Hall of Fame tradition.

151.     Defendant DelRio has falsely represented, through its continued operation of lowriderexperience.com and sales of LOWRIDER®-branded merchandise, that it remains an authorized licensee of Lowrider Ventures even though its license agreements have expired.

152.     Defendant GoLo Entertainment has falsely represented in response to internet browser searches that, "In 2026, the GoLo Entertainment celebrates its 48th year of existence," when in fact GoLo Entertainment has not been in existence for 48 years. This false statement misappropriates Lowrider Ventures' nearly five-decade brand history as GoLo's own and is designed to deceive consumers into believing GoLo is the legitimate continuation of the LOWRIDER® brand.

153.     Defendants GoLo Entertainment and DelRio have embedded direct hyperlinks to Lowrider Ventures' official social media accounts (including its Instagram, Facebook, YouTube, TikTok, and X accounts) on their websites goloentertainment.com and lowriderbrand.com, respectively, creating the false and misleading impression that these websites are official or authorized channels of the LOWRIDER® brand. Additionally, lowriderbrand.com falsely states Lowrider Ventures' "LOWRIDER and LOWRIDER SUPER SHOWS trademarks, designs,

copyrights and/or intellectual property rights are owned and used by LA RAZA HOLDINGS, INC," which is a false representation of the ownership of that intellectual property.

154. Defendant Impalas Magazine includes a disclaimer on its website acknowledging that its events are "no affiliated with, endorsed by, sponsored by, or associated with Lowrider™," using the ™ symbol to acknowledge that the LOWRIDER mark belongs to another party, yet simultaneously and prominently uses the LOWRIDER® mark to promote and sell tickets to unauthorized events. This contradictory disclaimer constitutes an admission that Impalas Magazine knows the LOWRIDER® mark belongs to Lowrider Ventures, yet willfully continues to use it in false advertising.

155. Event Defendants' false statements were made in interstate commerce in connection with the advertising and promotion of Defendants' events and merchandise.

156. Event Defendants' false advertising occurs in the course of commercial advertising and promotion broadcast and is published to the general public through websites, social media accounts, event flyers, merchandise listings, and promotional materials, each of which constitutes an advertisement under federal and state law.

157. In the alternative, to the extent any of Event Defendants' false advertising was not made with actual knowledge of its falsity, such false advertising was nonetheless made with reckless disregard of the truth of Event Defendants' representations and in reckless disregard of Lowrider Ventures' rights.

158. Event Defendants' false statements have the capacity to deceive, and have actually deceived, a substantial segment of the consuming public, as evidenced by the widespread consumer confusion documented on social media and described in ¶¶ 94-99 above, including

consumers asking whether Event Defendants' events are "sanctioned" by Lowrider and expressing confusion about which entity is organizing the official Las Vegas Supershow.

159.    Event Defendants' false statements are material to consumers' purchasing decisions because they are likely to influence — and have influenced — consumers' decisions regarding which automotive events to attend, which merchandise to purchase, and which entities to support or patronize. Consumers rely on the LOWRIDER® mark as an indicator of official, authorized events and merchandise, and Event Defendants' false statements exploit that reliance to divert consumers from Lowrider Ventures' official offerings to Event Defendants' unauthorized events and products.

160.    Event Defendants' false advertising has caused and continues to cause injury to Lowrider Ventures, including diversion of customers, loss of goodwill, and damage to Lowrider Ventures' reputation.

161.    Lowrider Ventures has been damaged and will continue to be damaged by Event Defendants' false advertising unless enjoined by this Court.

**<u>FIFTH CAUSE OF ACTION</u>**
**Federal Trademark Counterfeiting of GOLO MAN® Mark (15 U.S.C. § 1114(1)(a))**
**(Against Defendants GoLo Entertainment, Richard Ochoa, Motorsport Showcase, DelRio Marketing, Inc., and Brian E. Acquafresca by Plaintiff Lowrider Ventures)**

162.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

163.    Lowrider Ventures owns valid and enforceable federal trademark registrations for the GOLO MAN® mark.

164.    Defendants GoLo Entertainment, Richard Ochoa, Motorsport Showcase, DelRio, and Brian E. Acquafresca have used, and continue to use, in interstate commerce, spurious and counterfeit marks that are identical with, or substantially indistinguishable from, Lowrider

Ventures' registered GOLO MAN® mark, within the meaning of 15 U.S.C. § 1116(d)(1)(B). Defendants' marks are not genuine marks applied by or with the authorization of the registrant, but are unauthorized reproductions applied to goods and services of the same type for which Lowrider Ventures' GOLO MAN® mark is registered.

165. Specifically, these Defendants have reproduced and distributed merchandise bearing the GOLO MAN mark and design, including visors and apparel, that are identical to or substantially indistinguishable from Lowrider Ventures' registered GOLO MAN® mark.

166. In addition, Defendant DelRio's website at www.delriobrands.com prominently displays a logo that is confusingly similar to Lowrider Ventures' registered GOLO MAN® mark, and uses the logo in connection with the sale and promotion of clothing and merchandise branded as "GOLOMAN", including beanies, hoodies, and apparel. DelRio's use of a confusingly similar GOLO MAN logo on its website constitutes counterfeiting of Lowrider Ventures' registered GOLO MAN® mark.

167. Defendants' counterfeit GOLO MAN marks are used in connection with the same or substantially similar goods for which Lowrider Ventures' GOLO MAN® mark is registered.

168. Defendants knew or should have known that their marks were counterfeit and that their use was likely to cause confusion, mistake, or deception.

169. Defendants' use of counterfeit GOLO MAN marks was intentional, knowing, and willful.

170. By reason of Defendants' trademark counterfeiting, Lowrider Ventures is entitled to recover statutory damages of up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed pursuant to 15 U.S.C. § 1117(c).

171. Lowrider Ventures is further entitled to treble damages and attorneys' fees as a matter of right pursuant to 15 U.S.C. § 1117(b) because Defendants' counterfeiting was intentional and willful.

172. Lowrider Ventures is entitled to ex parte seizure of all counterfeit goods and materials pursuant to 15 U.S.C. § 1116(d).

173. Lowrider Ventures has been damaged and will continue to be damaged by Defendants' counterfeiting conduct unless enjoined by this Court.

**SIXTH CAUSE OF ACTION**
**Federal Trademark Infringement of GOLO MAN® Mark (15 U.S.C. § 1114)**
**(Against Defendants GoLo Entertainment, Richard Ochoa, Motorsport Showcase, DelRio Marketing, Inc., and Brian Acquafresca by Plaintiff Lowrider Ventures)**

174. Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

175. Lowrider Ventures owns valid and enforceable federal trademark registrations for the GOLO MAN® mark.

176. Defendants GoLo Entertainment, Richard Ochoa, Motorsport Showcase, DelRio, and Brian Acquafresca have used, and continue to use, in interstate commerce, reproductions, counterfeits, copies, or colorable imitations of Lowrider Ventures' registered GOLO MAN® mark in connection with the sale, offering for sale, distribution, and advertising of goods and services, including the operation of "GoLo Entertainment," the sale and distribution of merchandise bearing the GOLO MAN mark at automotive events, and DelRio's display and use of a confusingly similar GOLO MAN logo on its website www.delriobrands.com to sell "GOLOMAN"-branded clothing and merchandise.

177. Defendants' use of the "GOLO" and "GoLo" names, including on merchandise such as visors, is likely to cause confusion, mistake, or deception as to the source, sponsorship, or

affiliation of Defendants' events and merchandise as they pertain to Lowrider Ventures and the GOLO MAN® mark.

178. In addition to the use of the "GOLO" and "GoLo" names, Defendant DelRio's website at www.delriobrands.com displays a logo that is confusingly similar to Lowrider Ventures' registered GOLO MAN® mark and uses it to sell and promote products branded as "GOLOMAN," including beanies, chenille hoodies, and other apparel. DelRio's use of the confusingly similar GOLO MAN logo is likely to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of DelRio's merchandise with Lowrider Ventures and the LOWRIDER® and GOLO MAN® Marks and brands.

179. Defendants' acts constitute trademark infringement in violation of 15 U.S.C. § 1114.

180. Defendants' acts have been willful and deliberate, entitling Lowrider Ventures to enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

181. Lowrider Ventures has been damaged and will continue to be damaged by Defendants' infringing conduct unless enjoined by this Court.

### SEVENTH CAUSE OF ACTION
**Contributory Trademark Infringement**
**(Against Event Defendants by Plaintiff Lowrider Ventures)**

182. Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

183. Defendant Richard Ochoa, as the founder, principal, and/or operator of Defendants GoLo Entertainment, LLC and Motorsport Showcase Events, LLC, has intentionally induced them and the other Event Defendants to infringe Lowrider Ventures' trademarks.

184. Ochoa knew or had reason to know that GoLo and Motorsport Showcase and the other Event Defendants were engaging in trademark infringement and continuing to supply services in support of the infringing activities.

185. Ochoa directly and personally participated in, directed, and controlled the infringing activities of GoLo and Motorsport Showcase.

186. Ochoa is liable for contributory trademark infringement.

187. The Event Defendants have each contributed to and facilitated each other's trademark infringement through their coordinated promotion and operation of infringing events and sale of infringing merchandise.

188. Each Event Defendant knew or had reason to know of the other Event Defendants' infringing activities and continued to support and participate in such activities.

189. Each Event Defendant is therefore liable for contributory trademark infringement for the infringing acts of the other Event Defendants.

### EIGHTH  CAUSE OF ACTION
### Vicarious Trademark Infringement
### (Against Event Defendants by Plaintiff Lowrider Ventures)

190. Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

191. Defendant Richard Ochoa has the right and ability to supervise and control the infringing activities of Defendants GoLo Entertainment, LLC and Motorsport Showcase Events, LLC.

192. Ochoa has an obvious and direct financial interest in the infringing activities of GoLo and Motorsport Showcase.

193.    Ochoa is vicariously liable for the trademark infringement by GoLo and Motorsport Showcase.

194.    Each Event Defendant has the right and ability to supervise and control the activities of its agents, employees, and co-venturers who have engaged in trademark infringement.

195.    Each Event Defendant has an obvious and direct financial interest in the infringing activities.

196.    Each Event Defendant is vicariously liable for the trademark infringement committed by its agents, employees, and co-venturers.

## NINTH  CAUSE OF ACTION
### Common Law Trademark Infringement
### (Against Event Defendants by Plaintiff Lowrider Ventures)

197.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

198.    Lowrider Ventures owns common law trademark rights in the LOWRIDER® and GOLO MAN® Marks arising from its long and continuous use of such marks in commerce.

199.    Event Defendants have used, and continue to use, marks that are confusingly similar to Lowrider Ventures' common law marks in connection with automotive events, merchandise, and related goods and services.

200.    Event Defendants' use of such marks is likely to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of Defendants' events and merchandise.

201.    Event Defendants' acts constitute common law trademark infringement.

202.    Lowrider Ventures has been damaged and will continue to be damaged by Event Defendants' infringing conduct unless enjoined by this Court.

## TENTH CAUSE OF ACTION
### Cybersquatting (15 U.S.C. § 1125(d))
### (Against DelRio Marketing, Inc. by Plaintiff Lowrider Ventures)

203.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

204.   Lowrider Ventures owns valid and enforceable federal trademark registrations for the LOWRIDER® Marks, which is famous and distinctive.

205.   DelRio has registered, trafficked in, and/or used domain names that are identical or confusingly similar to the LOWRIDER® Marks, including but not limited to the following Infringing Domain Names: (a) lowriderexperience.com (owned and operated by Defendant DelRio); (b) lowriderbrand.com (owned and operated by Defendant DelRio). WHOIS registration records for the foregoing domain names ("Infringing Domain Names") are attached hereto as **Exhibit L**.

206.   DelRio registered, trafficked in, and/or used the Infringing Domain Names with a bad faith intent to profit from Lowrider Ventures' famous LOWRIDER® Marks.

207.   DelRio's bad faith intent to profit is demonstrated by the factors set forth in 15 U.S.C. § 1125(d)(1)(B)(i), including but not limited to: (a) DelRio has no trademark or other intellectual property rights in the Infringing Domain Names; (b) The Infringing Domain Names do not consist of the legal names of DelRio or names otherwise commonly used to identify DelRio; (c) DelRio has used the Infringing Domain Names in connection with the bona fide offering of goods or services that directly compete with and infringe upon Lowrider Ventures' rights; (d) DelRio had actual knowledge of Lowrider Ventures' prior rights in the LOWRIDER® Marks at the time of registration and/or acquisition of the Infringing Domain Names; (e) DelRio has intentionally used the Infringing Domain Names to divert consumers from Lowrider Ventures'

official online locations to DelRio's websites for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of DelRio's websites; (f) DelRio has provided false or misleading contact information when applying for registration of the Infringing Domain Names, or have intentionally failed to maintain accurate contact information; and (g) DelRio has registered, acquired, and/or used multiple domain names identical or confusingly similar to Lowrider Ventures' famous LOWRIDER® Marks.

208.    DelRio's continued retention and use of domain names incorporating the LOWRIDER® Marks after the expiration of its license agreements on December 31, 2025 constitutes cybersquatting, as DelRio no longer has any authorization to use those domain names and is required by contract to transfer them to Lowrider Ventures.

209.    DelRio owns and operates the domain name lowriderbrand.com, which incorporates Lowrider Ventures' famous LOWRIDER® mark in its entirety. DelRio uses this domain for the direct commercial sale of apparel and merchandise bearing the LOWRIDER® Marks, including hoodies, T-shirts, hats, and other items displaying Lowrider logos and graphics. DelRio's license agreements with Lowrider Ventures' predecessors expired on December 31, 2025, and DelRio has no current authorization to use the LOWRIDER® Marks in connection with the sale of any goods or services. Despite this, lowriderbrand.com continues to actively market and sell LOWRIDER®-branded products, directly competing with Lowrider Ventures' authorized merchandise channels.

210.    DelRio has no trademark or other intellectual property rights in the domain name lowriderbrand.com. The domain name does not consist of DelRio's legal name or any name otherwise commonly used to identify DelRio prior to its adoption of the LOWRIDER® Marks. "Lowrider Brand" is not a trade name of DelRio. DelRio registered and uses the domain name

with a bad faith intent to profit from Lowrider Ventures' famous LOWRIDER® Marks by diverting consumers seeking the official LOWRIDER®-branded merchandise to DelRio's unauthorized competing products, thereby creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of DelRio's merchandise.

211.    DelRio's registration and continued use of the lowriderbrand.com domain name constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), and Lowrider Ventures is entitled to statutory damages of up to $100,000 for each infringing domain name pursuant to 15 U.S.C. § 1117(d), or, in the alternative, Lowrider Ventures' actual damages and DelRio's profits derived from its use of the infringing domain name.

212.    The LOWRIDER® Marks were distinctive and famous at the time DelRio registered, acquired, and/or began using the Infringing Domain Names.

213.    DelRio's registration, trafficking in, and use of the Infringing Domain Names violates 15 U.S.C. § 1125(d).

214.    By reason of DelRio's cybersquatting, Lowrider Ventures is entitled to recover statutory damages of up to $100,000 for each infringing domain name pursuant to 15 U.S.C. § 1117(d), or, in the alternative, Lowrider Ventures' actual damages and DelRio's profits.

215.    Lowrider Ventures is entitled to an order requiring DelRio to transfer the Infringing Domain Names to Lowrider Ventures pursuant to 15 U.S.C. § 1125(d)(1)(C).

216.    Lowrider Ventures has been damaged and will continue to be damaged by DelRio's cybersquatting unless enjoined by this Court.

## ELEVENTH CAUSE OF ACTION
### Common Law Unfair Competition
### (Against Event Defendants by Plaintiff Lowrider Ventures)

217.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

218.   Under Kansas common law, unfair competition encompasses conduct that is deceptive, fraudulent, or wrongfully injurious to another's business, including trademark infringement, misappropriation, and passing off.

219.   Event Defendants' compete with Lowrider Ventures and their conduct as alleged herein constitutes common law unfair competition because such conduct involves the unauthorized use of Lowrider Ventures' trademarks and goodwill arising from the LOWRIDER® brand to deceive consumers and divert business from Lowrider Ventures.

220.   Event Defendants' unfair competition, including the unauthorized use of Lowrider Ventures' trademarks, trade dress, and slogans, occurs in the course of Event Defendants' advertising of their events, merchandise, and services to the consuming public through websites, social media accounts, event flyers, and promotional materials constituting advertisements.

221.   Event Defendants' conduct as alleged herein constitutes unfair competition because such conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.

222.   Event Defendants have engaged in passing off by representing their events and merchandise as being associated with, sponsored by, or affiliated with Lowrider Ventures when they are not.

223.    Defendant DelRio's continued use of the LOWRIDER® marks after the expiration of its license agreements, in violation of its contractual obligations, constitutes common law unfair competition.

224.    Lowrider Ventures has suffered injury in fact and has lost money or property as a result of Event Defendants' unfair competition.

225.    Lowrider Ventures is entitled to damages, including disgorgement of all profits Event Defendants have obtained as a result of their unfair competition, and injunctive relief.

## TWELFTH CAUSE OF ACTION
### Common Law False Advertising / Misrepresentation
### (Against Event Defendants by Plaintiff Lowrider Ventures)

226.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

227.    Under Kansas common law, a party commits actionable misrepresentation and false advertising when it makes false statements of material fact in commercial advertising that are likely to deceive consumers and cause injury to a competitor.

228.    Event Defendants compete with Lowrider Ventures and have disseminated advertising and promotional materials that contain untrue and misleading statements regarding Event Defendants' events and merchandise, including false representations that Event Defendants' events are "sanctioned" shows, "qualifiers" for the Las Vegas Supershow and continuations of Lowrider Ventures' Lowrider Hall of Fame tradition; false representations that GoLo Entertainment has been in existence for 48 years when in fact that history belongs to Lowrider Ventures' LOWRIDER® brand; and the embedding of links to Lowrider Ventures' official social media accounts on Event Defendants' unauthorized websites to create the false impression of official affiliation.

229.    Defendant DelRio has disseminated advertising and promotional materials falsely implying that DelRio remains an authorized licensee of Lowrider Ventures even though its license agreements have expired.

230.    Event Defendants knew or should have known that their advertising and promotional statements were untrue or misleading.

231.    Event Defendants' false advertising has deceived and is likely to deceive consumers.

232.    As a direct and proximate result of Event Defendants' false advertising, Lowrider Ventures has suffered injury in fact and has lost money or property.

### THIRTEENTH CAUSE OF ACTION
**Intentional Interference with Prospective Economic Relations**
**(Against Event Defendants by Plaintiff Lowrider Ventures)**

233.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

234.    Plaintiff Lowrider Ventures had existing and prospective economic relationships with customers, event attendees, exhibitors, sponsors, and vendors who would attend, participate in, or support official LOWRIDER® events and purchase Lowrider Ventures' authorized merchandise.

235.    Event Defendants knew of these existing and prospective economic relationships.

236.    Event Defendants engaged in intentional, wrongful conduct designed to disrupt Lowrider Ventures' economic relationships, including by creating consumer confusion through the use of Lowrider Ventures' LOWRIDER® Marks, organizing competing events using the LOWRIDER® Marks, selling unauthorized merchandise using the LOWRIDER® Marks, and

making false representations about the nature and affiliation of Event Defendants' events and merchandise.

237. Event Defendants' conduct was independently wrongful, apart from the interference itself, because it constituted trademark infringement, trademark counterfeiting, cybersquatting, unfair competition, and false advertising. Event Defendants' interference was without justification or privilege.

238. Event Defendants' wrongful conduct actually disrupted Lowrider Ventures' prospective economic relationships by diverting customers, attendees, exhibitors, sponsors, and merchandise purchasers away from Lowrider Ventures' official events and authorized merchandise.

239. As a direct and proximate result of Event Defendants' intentional interference, Lowrider Ventures has suffered and will continue to suffer economic damages, including lost profits, lost business opportunities, and damage to goodwill.

## FOURTEENTH CAUSE OF ACTION
### Unjust Enrichment
### (Against Event Defendants by Plaintiff Lowrider Ventures)

240. Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

241. Event Defendants have been unjustly enriched at Lowrider Ventures' expense by misappropriating the GOLO MAN® and LOWRIDER® Marks, domain names, and goodwill to promote and operate Event Defendants' unauthorized events and to sell unauthorized merchandise.

242. Event Defendants knew and appreciated the benefits they received from their unauthorized use of Lowrider Ventures' intellectual property and Lowrider Ventures' brand recognition. Event Defendants have received substantial benefits in the form of revenues, profits,

increased customer traffic, enhanced reputation, and competitive advantage by trading on the goodwill and consumer recognition that Lowrider Ventures has developed in the LOWRIDER® brand over nearly five decades.

243.    Defendant DelRio has been unjustly enriched by continuing to use the LOWRIDER® Marks after the expiration of its license agreements without paying any licensing fees to Lowrider Ventures.

244.    Event Defendants have not compensated Lowrider Ventures for the benefits Defendants have received.

245.    It would be unjust and inequitable for Event Defendants to retain these benefits without compensating Lowrider Ventures.

246.    Lowrider Ventures is entitled to restitution and disgorgement of all benefits Event Defendants have received as a result of their wrongful conduct.

## FIFTEENTH CAUSE OF ACTION
### Civil Conspiracy
### (Against Event Defendants by Plaintiffs Lowrider Ventures and Fernandez)

247.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

248.    Defendants GoLo Entertainment, LLC, Richard Ochoa, Brian Acquafresca, Motorsport Showcase Events, LLC, DelRio Marketing, Inc., Lowrider Events Inc., Artemis Promotions, Impalas Magazine, and John Munoz d/b/a JM Showcase formed a conspiracy and agreed to engage in the wrongful conduct alleged herein, including trademark infringement, trademark counterfeiting, cybersquatting, unfair competition, and false advertising.  These Defendants admit they engaged in a "coordinated effort" to control the lowrider events marketplace, including providing a supposed "true Supershow" to the exclusion of Lowrider

Ventures.  Acquafresca's Gearheadevents.com powers the GoLo Entertainment website to aid the conspiring defendants in orchestrating their scheme.

249.    In furtherance of the conspiracy, Event Defendants committed overt acts including organizing, promoting, and operating infringing events using Lowrider Ventures' marks; manufacturing and distributing counterfeit merchandise; registering and using domain names incorporating Lowrider Ventures' marks; continuing to use those marks after license expiration; embedding links to Lowrider Ventures' official social media accounts on unauthorized websites to create false impressions of affiliation; making false claims of trademark ownership; and making false representations about the nature and affiliation of their events and merchandise.

250.    Each Event Defendant knew of and agreed to participate in the conspiracy and the wrongful conduct alleged herein.

251.    As a direct and proximate result of the conspiracy, Plaintiffs have suffered and will continue to suffer damages.

252.    Event Defendants are jointly and severally liable for all damages caused by the conspiracy.

### SIXTEENTH CAUSE OF ACTION
**Defamation**
**(Against Event Defendants by Plaintiffs Lowrider Ventures and Fernandez)**

253.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

254.    Upon information and belief, Event Defendants have published false statements of fact concerning Carlos Fernandez to third parties, including members of the lowrider community, potential customers, event attendees, exhibitors, sponsors, and business partners.

255. These false statements include, but are not limited to, statements falsely implying Mr. Fernandez does not legitimately own the LOWRIDER® intellectual property, falsely implying Mr. Fernandez acquired the LOWRIDER® brand through improper or illegitimate means, falsely implying Mr. Fernandez is unqualified to operate the LOWRIDER® brand, falsely implying incompetence and unfitness in Mr. Fernandez's professional capacity, falsely implying Mr. Fernandez is dishonest and fails to deliver on promises, falsely implying Mr. Fernandez is acting in bad faith to harm the lowrider community, falsely accusing Mr. Fernandez of fraud and dishonesty in business dealings, and falsely implying professional incompetence.

256. Upon information and belief, Event Defendants have published false statements of fact concerning Lowrider Ventures to third parties, including members of the lowrider community, potential customers, event attendees, exhibitors, sponsors, and business partners.

257. These false statements include, but are not limited to, statements falsely implying Lowrider Ventures does not legitimately own the LOWRIDER® and GOLO MAN® Marks; falsely stating Lowrider Ventures' business is no longer viable or operational; falsely implying Lowrider Ventures' LOWRIDER® events are not legitimate or authorized; falsely implying Lowrider Ventures has abandoned the lowrider community; falsely accusing Lowrider Ventures of operating in bad faith and exploiting the lowrider community; falsely accusing Lowrider Ventures of intellectual property theft, fraud, misrepresentation, and misappropriation; and falsely stating Lowrider Ventures has no legitimate business relationships or customer base.

258. In addition to the foregoing statements, Event Defendants have published the following specific false and disparaging statements on their publicly accessible websites and social media accounts, each of which constitutes a publication of material that slanders or libels Plaintiffs or disparages Plaintiffs' goods, products, or services: (a) GoLo Entertainment's claim that, "In

2026, the GoLo Entertainment celebrates its 48th year of existence," which falsely appropriates Plaintiffs' brand history and implies Mr. Fernandez is not the legitimate heir to the LOWRIDER® brand; (b) GoLo Entertainment's disclaimer on its About page that it is "no longer affiliated with Lowrider Magazine and its new owners," which characterizes Plaintiffs as outsiders or newcomers to a legacy brand, disparaging Plaintiffs' authenticity and legitimacy as the brand owner; and (c) DelRio's statement on delriobrands.com that "DelRio is responsible for the production, distribution, and retail of Lowrider Magazine," which directly disparages Plaintiff's actual product by implying Lowrider Magazine is not genuine or that Plaintiffs do not actually produce it.

259.    Lowrider Ventures legitimately acquired all rights in the LOWRIDER® Marks from Hearst Autos, Inc., and Mr. Fernandez is the rightful owner and operator of the LOWRIDER® brand.

260.    The foregoing statements were false at the time they were made.

261.    Event Defendants, upon information and belief, made the foregoing statements with knowledge of their falsity, or with reckless disregard for their truth or falsity.

262.    Event Defendants, upon information and belief, made the foregoing statements with malice and with the intent to harm Plaintiffs Lowrider Ventures and Mr. Fernandez, to divert business from Lowrider Ventures and Mr. Fernandez, and to promote Event Defendants' competing unauthorized events.

263.    The statements concerning Mr. Fernandez constitute defamation per se because they: (a) charge Mr. Fernandez with dishonesty, fraud, and lack of integrity; (b) tend to injure Mr. Fernandez in his trade, business, or profession; and (c) charge Mr. Fernandez with conduct that would tend to subject him to hatred, contempt, or ridicule.

264.   The statements concerning Lowrider Ventures constitute defamation per se because they tend to injure Lowrider Ventures in its trade or business by impugning the legitimacy of its intellectual property ownership, the quality of its goods and services, and its integrity in business dealings.

265.   As a direct and proximate result of Event Defendants' defamatory statements, Plaintiffs have suffered damages, including but not limited to: (a) injury to Lowrider Ventures' business reputation and goodwill; (b) injury to Mr. Fernandez's personal and professional reputation; (c) loss of customers, event attendees, exhibitors, sponsors, and business partners; (d) loss of prospective business relationships; (e) emotional distress, mental anguish, humiliation, and embarrassment suffered by Mr. Fernandez; and (f) other consequential damages.

266.   Upon information and belief, Event Defendants' defamatory statements were made as part of the coordinated conspiracy alleged herein and in furtherance of Event Defendants' scheme to misappropriate Plaintiffs' intellectual property and divert business from Lowrider Ventures and Mr. Fernandez.

267.   Plaintiffs are entitled to compensatory damages in an amount to be proven at trial, together with presumed damages due to the defamation per se, and punitive damages due to Event Defendants' malice and reckless disregard for the truth.

## SEVENTEENTH CAUSE OF ACTION
### Trade Libel / Business Disparagement
### (Against Event Defendants by Plaintiff Lowrider Ventures)

268.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

269.    Upon information and belief, Event Defendants have published false statements of fact to third parties that disparage the quality of Lowrider Ventures' goods and services and disparage Lowrider Ventures' title to its intellectual property.

270.    These false statements include, but are not limited to, statements falsely disparaging the quality of Lowrider Ventures' goods and services; falsely disparaging the quality and legitimacy of Lowrider Ventures' events; falsely implying that Lowrider Ventures does not legitimately own the LOWRIDER® brand; and falsely accusing Lowrider Ventures of intellectual property theft, fraud, misrepresentation and misappropriation.

271.    In addition to the foregoing statements made upon information and belief, Event Defendants have published the following specific false statements on their publicly accessible websites that disparage Plaintiff's goods, products, services, and title to intellectual property: (a) GoLo's false "48th year of existence" claim, which disparages Plaintiff's claim to the LOWRIDER® brand's heritage by attributing it to GoLo; (b) DelRio's false statement on delriobrands.com that "DelRio is responsible for the production, distribution, and retail of Lowrider Magazine," which disparages Plaintiff's actual ownership and operation of Lowrider Magazine; (c) GoLo's misleading disclaimer that, while purporting to disclaim affiliation, reinforces the false impression that GoLo is the legitimate successor to the LOWRIDER® franchise, thereby implying Lowrider Venture's official events and products are inferior or inauthentic; and (d) the promotion of the "Throwback Tour" by all Event Defendants, which implies Lowrider Ventures' authorized events are inferior or inauthentic and that the "real" LOWRIDER® experience is with the Event Defendants.

272.   The foregoing statements were published to third parties, including members of the lowrider community, potential customers, event attendees, exhibitors, sponsors, and business partners.

273.   The foregoing statements were false at the time they were made.

274.   Upon information and belief, Event Defendants made the foregoing statements with knowledge of their falsity, or with reckless disregard for their truth or falsity.

275.   Upon information and belief, Event Defendants made the foregoing statements with malice and with the intent to harm Plaintiff Lowrider Ventures, to divert business from Lowrider Ventures, and to promote Event Defendants' competing unauthorized events.

276.   Event Defendants' false statements were specifically directed at Lowrider Ventures' goods, services, and title to intellectual property, and were intended to and did cast doubt upon the quality of Lowrider Ventures' offerings and the legitimacy of its intellectual property ownership.

277.   As a direct and proximate result of Event Defendants' trade libel and business disparagement, Plaintiff Lowrider Ventures has suffered special damages, including but not limited to: (a) loss of customers who declined to attend Lowrider Ventures' official events; (b) loss of exhibitors and sponsors who declined to participate in or support Lowrider Ventures' official events; (c) loss of merchandise sales; (d) loss of licensing revenue; (e) loss of prospective business relationships and opportunities; (f) diminution in the value of Lowrider Ventures' intellectual property and goodwill; and (g) other consequential damages.

278.   As a result of Event Defendants' specific false statements identified above, Lowrider Ventures has suffered special damages including diversion of customers to Event Defendants' unauthorized events and merchandise, and loss of licensing revenue from prospective

licensees who have been misled about the ownership and legitimacy of Lowrider Ventures' intellectual property.

279.    Event Defendants' trade libel and business disparagement directly and proximately caused the foregoing special damages by inducing third parties to refrain from dealing with Lowrider Ventures and to instead patronize Event Defendants' unauthorized and infringing events and merchandise.

280.    Upon information and belief, Event Defendants' disparaging statements were made as part of the coordinated conspiracy alleged herein and in furtherance of Defendants' scheme to misappropriate Lowrider Ventures' intellectual property and divert business from Lowrider Ventures.

281.    Lowrider Ventures is entitled to compensatory damages in an amount to be proven at trial, together with punitive damages due to Defendants' malice and reckless disregard for the truth.

## EIGHTEENTH CAUSE OF ACTION
### Contributory Trademark Infringement (Venue Liability)
**(Against Venue Defendants – Las Vegas Convention and Visitors Authority, Reno-Sparks Convention & Visitors Authority, Salt Lake County, City of Albuquerque, and Town of Superior – by Plaintiff Lowrider Ventures)**

282.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

283.    As set forth above, Defendants GoLo Entertainment, Richard Ochoa, Brian Acquafresca, Motorsport Showcase, DelRio, Lowrider Events, Artemis Promotions, Impalas Magazine, and John Munoz d/b/a JM Showcase have directly infringed Plaintiff's LOWRIDER® Marks by organizing, promoting, and conducting the 2026 Throwback Tour events using Lowrider Ventures' marks without authorization.

284. The Venue Defendants own and/or operate the venues at which the infringing events are scheduled to take place or have taken place, including: (a) the Las Vegas Convention Center, owned and operated by LVCVA, located at 3150 Paradise Road, Las Vegas, Nevada 89109; (b) the Reno-Sparks Convention Center, owned and operated by RSCVA, located at 4590 South Virginia Street, Reno, Nevada 89502; (c) the Mountain America Exposition Center, owned by Salt Lake County, located at 9575 South State Street, Sandy, Utah 84070; (d) the Albuquerque Convention Center, located at 401 2nd Street NW, Albuquerque, New Mexico 87102, and the Albuquerque Rail Yards, located at 777 1st Street SW, Albuquerque, New Mexico 87102, both owned by the City of Albuquerque; and (e) the Town of Superior, Arizona venue located at 490 Main Street, Superior, Arizona 85173.

285. Each Venue Defendant knew or had reason to know that the events hosted at its facility or facilities involved the unauthorized use of Lowrider Ventures' LOWRIDER® Marks. Defendants' use of the LOWRIDER® and LOWRIDER SUPERSHOW™ marks is prominent and pervasive in the promotional materials, flyers, tickets, and advertising associated with the 2026 Throwback Tour events, which materials would have been provided to and/or reviewed by the Venue Defendants in connection with booking the events.

286. Despite such knowledge, or in willful blindness thereto, each Venue Defendant continued to provide its venue and related services for the 2026 Throwback Tour events, thereby supplying the necessary marketplace for the direct infringers to carry out their infringing activities.

287. Each Venue Defendant exercised sufficient control over the means of the infringement by controlling access to the premises, approving the events to be held at its facility or facilities, permitting the display and use of infringing marks at its venue(s), and providing logistical support and services necessary for the events to proceed. On information and belief, each

Venue Defendant entered into contracts with one or more Event Defendants governing the use of its property for the 2026 Throwback Tour events, which contracts gave each Venue Defendant the right to approve or reject the events, review event content and promotional materials, and impose conditions on the use of its property. Each Venue Defendant had the ability to prevent the infringing use of Lowrider Ventures' Marks by declining to host the events or imposing conditions prohibiting the unauthorized use of third-party trademarks.

288.    By providing the venues and services necessary for the infringing events with knowledge of, or willful blindness to, the direct infringers' unauthorized use of Lowrider Ventures' LOWRIDER® Marks, each Venue Defendant is liable for contributory trademark infringement in violation of 15 U.S.C. § 1114 and the common law.

289.    Lowrider Ventures has been damaged and will continue to be damaged by the Venue Defendants' contributory infringement unless enjoined by this Court.

### NINETEENTH CAUSE OF ACTION
**False Endorsement (15 U.S.C. § 1125(a)(1)(A))**
**(Against Event Defendants by Plaintiff Lowrider Ventures)**

290.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

291.    Defendants GoLo Entertainment and DelRio, through their websites goloentertainment.com and lowriderbrand.com, have embedded direct hyperlinks to Lowrider Ventures' official social media accounts, including Instagram account (@lowridermagazine), Facebook page (/lowridermag), YouTube channel (/lowridermagazine), TikTok account (@officiallowridermagazine), and X account (@LowriderMag). These are Lowrider Ventures' official accounts — not accounts belonging to any Defendant.

292.    By embedding links to Lowrider Ventures' official social media accounts on their websites — websites used to promote unauthorized events and sell unauthorized merchandise bearing the LOWRIDER® Marks — Event Defendants create the false and misleading impression that their goods and services are endorsed by, sponsored by, affiliated with, or connected to Lowrider Ventures and the official LOWRIDER® brand. A reasonable consumer encountering Lowrider Ventures' official social media links on Event Defendants' websites would conclude Event Defendants' events and merchandise are officially sanctioned by or associated with Lowrider Ventures.

293.    GoLo further creates a false impression of endorsement and continuity by: (a) operating a "Lowrider Hall of Fame" using Lowrider Ventures' marks to create the appearance of being the official steward of the LOWRIDER® brand community; and (b) including on its website a purported disclaimer that, rather than dispelling confusion, reinforces the false impression that GoLo is the legitimate successor to the LOWRIDER® supershow franchise.

294.    Event Defendants' conduct constitutes false endorsement and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), because Event Defendants' use of Lowrider Ventures' official social media links, marks, brand history, and community programs on Event Defendants' commercial websites is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Event Defendants with Lowrider Ventures, and as to the origin, sponsorship, or approval of Event Defendants' goods, services, and commercial activities by Lowrider Ventures.

295.    Event Defendants' false endorsement has been willful and deliberate. Event Defendants have actual knowledge that they are not affiliated with or endorsed by Lowrider Ventures, as evidenced by their own contradictory disclaimers, yet they continue to embed

Lowrider Ventures' official social media links on their websites and make false claims about the ownership and history of the LOWRIDER® brand.

296.   Lowrider Ventures has been damaged and will continue to be damaged by Event Defendants' false endorsement unless enjoined by this Court,. and is entitled to injunctive relief, actual damages, disgorgement of Event Defendants' profits, enhanced damages for willful conduct, and attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

## TWENTIETH CAUSE OF ACTION
### Trade Dress Infringement (15 U.S.C. § 1125(a))
### (Against Event Defendants by Plaintiff Lowrider Ventures)

297.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

298.   The LOWRIDER® brand possesses a distinctive and protectable trade dress consisting of the following combination of non-functional visual elements, which have been consistently used together as a cohesive whole for nearly five decades: (a) a signature color palette of black or dark backgrounds with gold, yellow, and metallic accent colors and chrome elements; (b) Old English and Gothic-style typography for event titles, branding, and promotional headers; (c) chrome and metallic lowrider vehicle photography as centerpiece imagery; (d) the GOLO MAN® figure as a recurring visual element; and (e) a distinctive event promotional flyer format featuring dark backgrounds, featured vehicle photographs, stylized event titles in Old English or Gothic typography, gold or metallic accent borders, and venue and date information presented in a specific visual hierarchy. It is the specific, consistent combination of all five elements — not any single element in isolation — that creates the distinctive overall commercial impression that consumers associate exclusively with the LOWRIDER® Marks and brand. This trade dress has been in continuous and consistent use for nearly five decades and has acquired strong secondary

meaning in the minds of consumers as identifying Lowrider Ventures' official LOWRIDER® brand.

299.    Defendants GoLo Entertainment, Motorsport Showcase, and Richard Ochoa have replicated Plaintiff's LOWRIDER® trade dress in its entirety on their websites goloentertainment.com and motorsportshowcase.com and in their social media advertising, including the black/gold/metallic color palette, Old English typography, chrome car imagery, the GOLO MAN® figure, and the distinctive event flyer format, creating the overall commercial impression of an official LOWRIDER® brand property in advertisements published to the general public.

300.    Defendants DelRio and Brian Acquafresca have replicated the LOWRIDER® trade dress on lowriderbrand.com and delriobrands.com, including the complete brand visual identity, logo designs, product presentation format, and GOLO MAN® design elements, creating the overall commercial impression that lowriderbrand.com is Lowrider Ventures' authorized retail outlet, in advertisements and merchandise listings published to the general public.

301.    Defendants Lowrider Events Inc., Artemis Promotions, and Impalas Magazine have replicated Lowrider Ventures' LOWRIDER® trade dress on their respective websites and social media accounts, including dark backgrounds, chrome car imagery, Old English typography, and the distinctive event flyer format historically associated with official LOWRIDER SUPERSHOW™ events, in advertisements published to the general public.

302.    Event Defendants' replication of Plaintiff's LOWRIDER® trade dress is likely to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of Event Defendants' events and merchandise with Lowrider Ventures and the official LOWRIDER® brand. Event Defendants and Lowrider Ventures operate in identical channels of trade, target the

same consumers, and Event Defendants' deliberate replication of the overall commercial impression of Lowrider Ventures' brand in advertisements published to the general public is designed to trade on the goodwill the LOWRIDER® trade dress has developed over nearly five decades.

303.   The LOWRIDER® trade dress is non-functional and serves solely to identify the source of Lowrider Ventures' goods and services. Each element of the trade dress, and the combination thereof, serves no purpose other than to create a distinctive overall commercial impression associated with the LOWRIDER® trade dress and brand. Event Defendants' replication of the trade dress has been willful and deliberate. In the alternative, to the extent any Event Defendant's replication of the LOWRIDER® trade dress was not willful, such replication was nonetheless without authorization and in reckless disregard of Lowrider Ventures' established trade dress rights.

304.   Event Defendants' trade dress infringement constitutes unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a). Lowrider Ventures has been damaged and will continue to be damaged by Event Defendants' trade dress infringement unless enjoined by this Court. Lowrider Ventures is entitled to injunctive relief, actual damages, disgorgement of Event Defendants' profits, treble damages for willful infringement, and attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

## TWENTY-FIRST CAUSE OF ACTION
### Slogan Infringement and Unfair Competition (15 U.S.C. § 1125(a))
### (Against Event Defendants by Plaintiff Lowrider Ventures)

305.   Plaintiffs incorporate by reference and reallege each and every allegation set forth above as though fully set forth herein.

306. Plaintiff's LOWRIDER® brand is associated with the following distinctive advertising slogans and program names, each of which functions as a promotional phrase or tagline used to attract customers and supporters — distinct from the source-identifying trademarks alleged elsewhere in this Complaint — and each of which has acquired secondary meaning through long and continuous use in Lowrider Ventures' advertising identifying official goods, services, and programs: (a) "Lowrider Hall of Fame" — the name of Lowrider Ventures' program honoring distinguished members of the lowrider community; (b) "Lowrider Events Tour Director" — the professional title historically associated with Lowrider Ventures' official event management; and (c) "Lowrider Supershow" — used as a distinctive advertising tagline and event branding element. Each of these slogans and program names has been used as advertising copy in Lowrider Ventures' promotional materials and is associated in the minds of consumers with the official LOWRIDER® brand.

307. Defendant GoLo Entertainment has infringed Plaintiff's distinctive slogans and program names by operating a "Lowrider Hall of Fame" page on goloentertainment.com; Defendant Richard Ochoa has used the title "Lowrider Events Tour Director" on promotional materials. All of these uses occur in advertisements published to the general public for the purpose of attracting dollars, customers and supporters to Defendants' events.

308. Defendant Lowrider Events Inc. has infringed Lowrider Ventures' distinctive slogans by using the phrase "Lowrider Supershow" as a branding tagline for its Tampa and Charlotte events. These uses occur in advertisements published to the general public.

309. All Event Defendants have used "Lowrider Supershow" as an advertising tagline throughout their websites, social media accounts, event flyers, and promotional materials, each of

which constitutes an advertisement broadcast or publication to the general public for the purpose of attracting customers.

310. Event Defendants' use of Lowrider Ventures' distinctive slogans and program names in their advertisements is likely to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of Event Defendants' events with Lowrider Ventures and the official LOWRIDER® brand. Event Defendants' slogan infringement has been willful and deliberate. In the alternative, to the extent any Event Defendant's use of Lowrider Ventures' slogans was not willful, such use was nonetheless without authorization and in reckless disregard of Lowrider Ventures' rights in its distinctive slogans and program names.

311. Event Defendants' slogan infringement constitutes unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a). Lowrider Ventures has been damaged and will continue to be damaged by Event Defendants' slogan infringement unless enjoined by this Court. Lowrider Ventures is entitled to injunctive relief, actual damages, disgorgement of Event Defendants' profits, treble damages for willful infringement, and attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants, jointly and severally, as follows:

A. That Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, be temporarily, preliminarily, and permanently enjoined from:

i.    Using the LOWRIDER® mark, the GOLO MAN® mark, or any confusingly similar marks in connection with the advertising, promotion, sale, or offering for sale of any goods or services;

ii.    Using any mark, name, or designation confusingly similar to Plaintiff's LOWRIDER® or GOLO MAN® Marks, including "GoLo," "GOLO," "GoLo Entertainment," "Lowrider Supershow," "Lowrider Experience," "Lowrider Brand," or any variation thereof;

iii.    Making any false or misleading statements regarding the source, sponsorship, affiliation, or nature of Defendants' events or merchandise, or making any defamatory statements concerning Plaintiffs, their intellectual property ownership, their business, or Mr. Fernandez's personal or professional reputation;

iv.    Otherwise unfairly competing with Plaintiffs;

v.    Engaging in any other activity constituting an infringement of Lowrider Ventures' trademark rights;

vi.    Assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities enumerated above; and

vii.    Using, registering, trafficking in, or maintaining any domain name that incorporates or is confusingly similar to Lowrider Ventures' LOWRIDER® marks, including but not limited to lowriderexperience.com, lowriderbrand.com, and lowriderevents.com.

B.    That the Court issue an ex parte order for seizure of all counterfeit goods and materials pursuant to 15 U.S.C. § 1116(d);

C.     That Defendants be required to account to Plaintiffs for all profits derived from their infringing activities, and that Plaintiffs be awarded all such profits;

D.     That Plaintiffs be awarded all damages sustained as a result of Defendants' acts, in an amount to be proven at trial;

E.     That Lowrider Ventures be awarded statutory damages for trademark counterfeiting of up to $2,000,000 per counterfeit mark per type of goods or services pursuant to 15 U.S.C. § 1117(c);

F.     That Lowrider Ventures be awarded statutory damages for cybersquatting of up to $100,000 per domain name pursuant to 15 U.S.C. § 1117(d);

G.     That Lowrider Ventures' damages and/or Defendants' profits be trebled pursuant to 15 U.S.C. § 1117(a) and (b);

H.     That this case be found exceptional and that Lowrider Ventures be awarded its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a);

I.     That Lowrider Ventures be awarded mandatory treble damages and attorneys' fees for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(b);

J.     That Plaintiffs be awarded their costs of suit;

K.     That Defendants be required to deliver up for destruction all labels, signs, prints, packages, wrappers, receptacles, advertisements, merchandise, collectible dolls, figurines, derivative works, and other materials in their possession, custody, or control bearing any of the infringing or counterfeit marks;

L.     That Defendants be required to transfer to Lowrider Ventures all domain names incorporating or confusingly similar to the LOWRIDER® GOLO MAN® Marks, including but

not limited to lowriderexperience.com, lowriderbrand.com, delriobrands.com, and lowriderevents.com, pursuant to 15 U.S.C. § 1125(d)(1)(C);

M.     That Defendant DelRio Marketing, Inc. be ordered to immediately cease all use of the LOWRIDER® and GOLO MAN® Marks and transfer all domain names containing the LOWRIDER® mark to Lowrider Ventures;

N.     That Defendants be required to file with the Court and serve on Plaintiffs within thirty (30) days after entry of judgment a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

O.     That Plaintiffs be awarded restitution and disgorgement of all benefits Defendants have received as a result of their wrongful conduct;

P.     That Plaintiffs be awarded pre-judgment and post-judgment interest;

Q.     That the Court order corrective advertising at Defendants' expense;

R.     That Plaintiffs be awarded compensatory damages for defamation and trade libel, including damages for injury to Plaintiffs' business reputation and goodwill, injury to Mr. Fernandez's personal and professional reputation, and all consequential damages, in an amount to be proven at trial;

S.     That Plaintiffs be awarded presumed damages for defamation per se;

T.     That Plaintiffs be awarded punitive damages for Defendants' malicious and willful defamation and trade libel, pursuant to Kansas common law, based on Defendants' conduct as alleged in the Sixteenth and Seventeenth Causes of Action;

U.     That Lowrider Ventures be awarded special damages for trade libel, including loss of customers, exhibitors, sponsors, merchandise sales, licensing revenue, and diminution in the value of Lowrider Ventures' intellectual property and goodwill;

V. That Defendants be enjoined from making any false statements concerning Plaintiffs' ownership of the LOWRIDER® intellectual property, Mr. Fernandez's integrity, competence, or fitness to operate the LOWRIDER® brand, and the legitimacy, quality, or viability of Lowrider Ventures' business;

W.    That the Venue Defendants be permanently enjoined from providing their venues and facilities for any events that use Plaintiff's LOWRIDER® marks, GOLO MAN® marks, LOWRIDER SUPERSHOW™ marks, or any confusingly similar marks without Lowrider Ventures' express written authorization;

X.    That Defendants be ordered to immediately remove from their websites all hyperlinks to Lowrider Ventures' official social media accounts, including but not limited to Lowrider Ventures' Instagram, Facebook, YouTube, TikTok, and X accounts, and be permanently enjoined from linking to, embedding, or otherwise referencing Lowrider Ventures' official social media accounts on any website or online platform operated by or on behalf of any Defendant;

Y.    That Defendants and all persons in active concert or participation with them, including but not limited to La Raza Holdings, Inc., pursuant to Fed. R. Civ. P. 65(d)(2), be ordered to immediately remove all false claims of ownership of Lowrider Ventures' LOWRIDER®, GOLO MAN®, and LOWRIDER SUPERSHOW™ trademarks from any website, promotional material, or other medium, and be permanently enjoined from making any false representation regarding the ownership of Lowrider Ventures' intellectual property;

Z.    That Defendants be permanently enjoined from using Plaintiff's LOWRIDER® trade dress — including the signature black/gold/metallic color palette, Old English and Gothic typography, chrome lowrider vehicle imagery, the GOLO MAN® figure, and the distinctive event

promotional flyer format — or any confusingly similar trade dress, in any advertisement, website, social media account, event flyer, merchandise listing, or other promotional material;

AA.    That Defendants be permanently enjoined from using Lowrider Ventures' distinctive slogans and program names — including "Lowrider Hall of Fame," "Lowrider Club Registry," "Lowrider Events Tour Director," "Throwback Tour," "The Largest and Most Admired Supershows," and all variations thereof — in any advertisement, website, social media account, event flyer, or other promotional material;

BB.    That Lowrider Ventures be awarded treble damages, attorneys' fees, and costs for willful trade dress and slogan infringement under 15 U.S.C. §§ 1117(a) and (b); and

CC.    That Plaintiffs be awarded such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

/s/ Alan L. Rupe
Alan L. Rupe, KS #08914
LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, KS 67206
Telephone: 316.609-7916
Facsimile:  316-462-5746
alan.rupe@lewisbrisbois.com